500 S.E.2d 860

Michael L. HARMON, Appellant,

v.

ELKAY MINING COMPANY, a West Virginia Corporation; Coal Carriers, Inc., a West Virginia Corporation; CLM Trucking, Inc., a West Virginia Corporation; and Circle Transport, Inc., a West Virginia Corporation, Appellees.

No. 24003.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 7, 1997.

Decided Dec. 16, 1997.

**748**

Marvin W. Masters, Paula L. Wilson, Robert A. Taylor, Masters & Taylor, L.C., Charleston, for Appellant.

John R. Fowler, John A. Singleton, Margaret M. Singleton, Huddleson, Bowling, Beatty, Porter and Copen, Charleston, for Appellee, Elkay Mining Company.

Johnnie E. Brown, Marianna Bush McHugh, Shaffer & Shaffer Charleston, for Appellees, Coal Carriers, Inc., CLM Trucking Inc., and Circle Transport, Inc.

PER CURIAM:[1]

This is an appeal by Michael L. Harmon from various summary judgment and directed verdict orders entered by the Circuit Court of Logan County in an action instituted by the appellant for injuries sustained in the course of employment. The circuit court granted summary judgment to two of the defendants, Coal Carriers, Inc., and Circle Transport, Inc., and granted two other defendants, Elkay Mining Company, and CLM Trucking, Inc. directed verdicts.[2] On appeal, the appellant claims that the trial court erred in granting the summary judgments and in directing the verdicts. He also claims that the circuit court committed various procedural errors. After reviewing the issues presented and the documents filed, this Court agrees that the trial court erred in entering the summary judgments and the directed verdicts. The judgment of the Circuit Court of Logan County is, therefore, reversed, and this case is remanded for further development.

On March 23, 1992, the appellant, Michael Harmon, received severe injuries when he jumped from a runaway truck in the course of his employment. There is some dispute as to whether his employer at the time was Coal Carriers, Inc., or Circle Transport, Inc., or whether the two were operating in tandem as

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992) ("Per curiam opinions ... are used to decide only the specific case before the Court; everything in a per curiam opinion beyond the syllabus point is merely obiter dicta.... Other courts, such as many of the United States Circuit Courts of Appeals, have gone to non-published (not-to-be-cited) opinions to deal with similar cases. We do not have such a specific practice, but instead use published per curiam opinions. However, if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion.").

2. There were other defendants in the case, but the actions involving them are not in issue in this appeal.

the part of a joint venture. The runaway truck, which the appellant was driving, was owned by CLM Trucking, Inc., and was leased to Coal Carriers, Inc. The accident occurred on a steep road located on property controlled and operated by Elkay Mining Company.

The appellant believed that a number of factors potentially contributed to, or caused, the accident. He believed that Coal Carriers, Inc., his nominal employer, had not properly inspected or maintained the truck and that it had not properly trained him in the operation of the truck. He believed that CLM Trucking, Inc., the owner of the truck, had not disclosed its actual mileage, and by inference, the wear on its brakes, at the time of leasing it to Coal Carriers, Inc. He also believed that CLM Trucking, Inc. had not ascertained the conditions under which the truck would be operating and as a consequence had not provided a proper vehicle to Coal Carriers, Inc. Lastly, he believed that Elkay Mining Company had not properly constructed and maintained the roadway over which he was traveling at the time of the accident and that it had allowed him to overload the truck prior to the accident.

A circumstance potentially affecting the appellant's right to bring this civil action against Coal Carriers, Inc., and Circle Transport, Inc., was the fact that the appellant was injured in the course of and as a result of his employment and that his injury was thus covered by West Virginia's Workers' Compensation Act, W.Va.Code § 23–1–1, *et seq.* A section of that Act, W.Va.Code § 23–2–6, ordinarily provides a covered employer with immunity from liability in a civil action for injuries to an employee sustained in the course of and as a result of employment. The relevant language, W.Va.Code § 23–2–6, states, in part:

> Any employer subject to this chapter who shall subscribe and pay into the workers' compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which such employer shall not be in

default in the payment of such premiums or direct payments and shall have complied fully with all other provisions of this chapter.

There is, however, an exception to this when an accident occurs when the so-called *Mandolidis v. Elkins Indust., Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978) facts are present. The exception is established by W.Va.Code § 23–4–2(c), which provides, in part:

> (2) The immunity from suit provided under this section and under section six-a [§ 23–2–6a], article two of this chapter, may be lost only if the employer or person against whom liability is asserted acted with "deliberate intention". This requirement may be satisfied only if:
>
> (i) It is proved that such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct; or
>
> (ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:
>
> (A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;
>
> (B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;
>
> (C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard

within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

In instituting and prosecuting the present action the appellant sought to hold his nominal employer, Coal Carriers, Inc., liable on the ground that Coal Carriers, Inc. had failed to provide for the regular inspection and maintenance of the truck. He specifically stated:

... Coal Carriers' failure to properly maintain and service the coal truck plaintiff was driving created an unsafe working condition.... Coal Carriers had a subjective realization and an appreciation of the existence of the unsafe working condition and of the high degree of risk and strong probability of serious injury or death presented by the unsafe working condition so created.

He also alleged that by requiring him to operate the truck under such conditions was in violation of well-known safety standards. In pleading the case in this manner the appellant, in effect, alleged that he fell within the *Mandolidis* exception established by W.Va.Code § 23–4–2(c)(2)(ii). The appellant claimed that Coal Carriers, Inc., had not provided him with appropriate training for operating the vehicle.

The appellant had been hired by Circle Transport, Inc., and in the months before the accident, he had been paid only once by Coal Carriers, Inc. He had never completed paperwork for employment by Coal Carriers, Inc. These facts, and the fact that Coal Carriers, Inc., was jointly managed with Circle Transport, Inc., by the same individuals, led the appellant to claim that Coal Carriers,

Inc., and Circle Transport, Inc., were involved in a joint venture and that, as a consequence, Circle Transport, Inc., was jointly liable with Coal Carriers, Inc., for his injuries. In the alternative, he claimed that Circle Transport, Inc., was his actual employer, and that Coal Carriers, Inc., was only his nominal employer.

As previously stated, the truck in which the appellant was riding at the time of the accident was owned by CLM Trucking, Inc., and was leased to Coal Carriers, Inc. In instituting and prosecuting the present action the appellant claimed that CLM did not disclose the actual mileage on the truck prior to leasing the truck even though CLM knew or reasonably should have known the actual mileage. He also argued that the brakes on the vehicle were insufficient for the gross volume weight that it was carrying and that the truck was not in a safe operating condition at the time of the accident. He asserted that prior to leasing the trucks, CLM Trucking, Inc., did not ascertain the conditions under which the truck would be used at the Elkay Mining Company property, and did not ascertain if the truck was the correct or appropriate piece of equipment for such a project.

The appellant sought to hold Elkay Mining Company liable on the ground that it had negligently maintained the haulway or roadway on which the accident occurred. He further asserted that coal trucks hauling coal on the property were, as a general rule, loaded far beyond manufacturer's specifications.

In the course of discovery following institution of the action, testimony and documents were produced which showed that the appellant was injured on March 23, 1992, when he jumped from the coal truck he was operating after losing control of it as he was driving down a steep hill on the road on the Elkay Mining Company property. The evidence also tended to show that at the time the appellant was, at least nominally, an employee of Coal Carriers, Inc. CLM Trucking, Inc., did own the truck which the appellant was operating.

Other facts showed that at the top of the road on the Elkay Mining Company property

there was a sign instructing truckers to stop and check their brakes before descending. There was further evidence that there were signs posted along the road directing truckers to keep their trucks in second gear and establishing a speed limit of 15 miles per hour. Other evidence showed that the appellant was specifically trained never to jump from a truck in a runaway situation, and that he was trained to place his truck in a ditch in the event that he lost control of it. At the time of the accident the appellant had been hauling coal and using the road where the accident occurred in the same truck for approximately two to three months, and he was solely responsible for loading the truck and, in fact, had loaded his truck by himself immediately prior to the accident in question.

The evidence developed during discovery also showed that after loading the truck on the day of the accident the appellant proceeded down the road even though the truck was not in second gear. As the road became steeper, he attempted to shift into second gear but was not able to do so. When he lost control, he chose to jump from it rather than ditch it as he had been trained to do. The Federal Mine Safety and Health Administration conducted an investigation of the accident and, upon concluding that investigation, reported:

> [T]he cause of the accident was the driver's failure to maintain the vehicle under control. A possible contributing factor was the failure to follow the warning signs posted on the haulage road, which requires drivers to keep their trucks in no higher gear than second direct at any time period.

The report also stated:

> It could not be determined why Harmon did not elect to steer the runaway truck into the drainage ditch located against the high wall of the descending haul road.

The appellant's two possible employers, Coal Carriers, Inc., and Circle Transport, Inc., moved for summary judgment before the case was actually tried, and the trial court granted those motions. In granting the motion of Coal Carriers, Inc., the court found that Coal Carriers, Inc., was the appellant's employer and that it was immune from liability because of the West Virginia Workers' Compensation Act. In reaching this conclusion the Court, in essence, found that the

appellant could not establish the so-called *Mandolidis* facts detailed in W.Va.Code § 23–4–2(c)(2)(ii), which would enable him to circumvent the Workers' Compensation immunity. In particular, it appears that the court concluded that the appellant could not show that any dereliction on the part of Coal Carriers, Inc., was a "violation of a state or federal safety statute, rule or regulation" as is required by W.Va.Code § 23–4–2(c)(2)(ii)(C), to invoke the *Mandolidis* exception to Workers' Compensation Immunity.

Although the Court in its order did not detail the basis for granting Circle Transport, Inc., summary judgment it is apparent that the appellant's claim was either that Circle Transport, Inc., was in a joint venture with Coal Carriers, Inc., and was thus jointly liable with Coal Carriers, Inc., or that it was the appellant's actual employer. Under either circumstance, the appellant would have had to circumvent the Workers' Compensation immunity under the *Mandolidis* exception, and as with Coal Carriers, Inc., the court apparently concluded that the appellant could not establish those facts.

 This Court has indicated that:

> A circuit court's entry of summary judgment is reviewed *de novo*.

Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

Further, in Syllabus Point 3 of *Aetna Casualty & Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), the Court stated:

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

 In reviewing documents filed in the present case the Court believes that, at the very least, further inquiry concerning the facts is desirable to clarify the question of whether the Coal Carriers, Inc., did violate any state or federal safety statute or rule or regulation. Facts were adduced which suggest that for a short distance, at least, the route over which the appellant was required to travel at the time the accident passed over a public highway. The appellant also

pointed out that W.Va.Code § 24A–1–1 grants the West Virginia Public Service Commission the power to regulate and supervise transportation over a public highway. In exercising this power the West Virginia Public Service Commission has adopted *in toto* safety rules and regulations promulgated by the U.S. Department of Transportation, Federal Highway Administration, Bureau of Motor Carrier Safety. Among other things, the regulations promulgated by the U.S. Department of Transportation, Federal Highway Administration, Bureau of Motor Carrier Safety, require that a truck used on a public highway must have brakes adequate to control the movement of and to stop and to hold the vehicle. They also contain a number of other provisions relating to brakes and specifically requiring that every motor carrier systematically inspect, repair and maintain vehicles under their control.

Although the Court believes that the facts developed during discovery are far from conclusive, those facts, when viewed in a light favorable to the appellant, suggest that the rules and regulations of the West Virginia Public Service Commission relating to the inspection and maintenance of vehicles may have applied at the time of the accident. This is supported by the fact that the appellant submitted to the court a letter from Thornton Cooper, legal counsel for the West Virginia Public Service Commission, in which Mr. Cooper expressed the opinion that the rules and regulations of the Public Service Commission applied to the facts of this case. The Court also believes that Coal Carriers, Inc., may have violated those regulatory requirements. Specifically, evidence was introduced showing that Coal Carriers, Inc., had only one mechanic, Bradley Bateman, responsible for maintaining trucks at the site where the appellant was working. Mr. Bateman possessed no certificate showing that he had been trained to work on braking systems of trucks even though such a certificate was required for anyone working on braking systems by 49 *C.F.R.* § 396, and, by adoption, by the West Virginia Public Service Commission. Within eighteen months prior to the appellant's accident Coal Carriers, Inc., had been cited by the Mine Health and Safety Administration for brake problems. Furthermore, a picture of the appellant's truck

showed that "slack adjustors" on its brakes protruded 6 inches when there was evidence that they should not protrude more than 1/2 to 1 inch, a circumstance suggesting that the brakes were not properly maintained. Finally, the appellant's position essentially was that the brakes would not stop the truck and that, as a consequence, the accident occurred. To establish this, two experts for the appellant, Rex Haynes and Bernie Cobb, testified that the brakes were not properly maintained and were not adequate to stop the truck at the time of the accident.

In this Court's opinion there was sufficient evidence in the case, if the doubts were resolved in favor of the appellant, to show what must be shown under W.Va.Code § 23–4–2(c)(2)(ii) to circumvent the Workers' Compensation immunity of Coal Carriers, Inc. There was evidence from which a jury could have concluded that the brakes were not properly maintained, and the Court believes that the jury could have concluded that improperly-maintained brakes could have created a high degree of risk to the appellant in this case. Coal Carriers, Inc., had previously been cited for brake problems, and from this a jury could have concluded that it had a subjective realization of the condition. The fact the truck passed over a public road suggested that the federal regulations relating to brakes, which were adopted by the West Virginia Public Service Commission, applied. Lastly, the appellant did suffer serious injury which, in this Court's opinion, the jury could have concluded was a proximate result of defective maintenance of the brakes.

■ As previously explained, the appellant claimed that Circle Transport, Inc., and Coal Carriers, Inc., were actually part of a joint venture, or that, in the alternative, although he was nominally an employee of Coal Carriers, Inc., he was actually an employee of Circle Transport, Inc. To establish both these points, the appellant produced evidence which showed that he was actually initially hired by Circle Transport, Inc., and that there was no paper work to show that he had ever applied for a job with Coal Carriers, Inc. Further, he showed that, except for one paycheck, he had been paid for all work done hauling coal from the Elkay Mine from Janu-

ary to the date of the accident, not by his nominal employer, Coal Carriers, Inc., but by Circle Transport, Inc. To establish the joint venture, the appellant adduced evidence showing that Circle Transport, Inc., and Coal Carriers, Inc., were jointly operated by the Cox Brothers and that funds were freely shifted among the entities operated by the Cox Brothers.

In this Court's view the evidence adduced during discovery does raise the question of whether the claimant was an employee of Coal Carriers, Inc., or Circle Transport, Inc., or by both operating as a joint venture. Under the circumstances the Court believes that further development of the evidence is desirable to clarify the identity of the appellant's actual employer, and if that employer was actually Circle Transport, Inc., or a joint venture, the Court believes that the same *Mandolidis* circumstances would be present as are present in case against Coal Carriers, Inc.

Overall, the Court believes that, at the very least, further development of the facts was desirable to clarify the application of the law insofar as Coal Carriers, Inc., and Circle Transport, Inc., were concerned, and that as a consequence the trial court erred in granting them summary judgment.

The case proceeded to trial against CLM Trucking, Inc., and Elkay Mining Company. At the close of the appellant's case, both CLM Trucking, Inc., and Elkay Mining Company moved for directed verdicts. After reviewing the questions involved, the trial court granted their motions, and on appeal the appellant claims that the trial court erred in directing verdicts for these defendants.

■ The Court has indicated that where plaintiff's evidence does not establish a *prima facie* right of recovery, a directed verdict is appropriate. *Totten v. Adongay*, 175 W.Va. 634, 337 S.E.2d 2 (1985). In Syllabus Point 5 of *Wager v. Sine*, 157 W.Va. 391, 201 S.E.2d 260 (1973), the Court also stated:

Upon a motion for directed verdict, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed.

■ The Court has also indicated that where questions of negligence and comparative negligence are involved, as in the case of the appellant's claims against CLM Trucking, Inc., and Elkay Mining Company, those questions ordinarily should be submitted to a jury. Specifically, Syllabus Point 6 of *McAllister v. Weirton Hospital Company*, 173 W.Va. 75, 312 S.E.2d 738 (1983) states:

"Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syl. pt. 1, *Ratlief v. Yokum*, 167 W.Va. 779, 280 S.E.2d 584 (1981), *quoting*, syl. pt. 5, *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964).

■ The appellant's theory for recovery against CLM Trucking, Inc., was that CLM Trucking, Inc., had failed to ascertain, and as a consequence had misrepresented, the number of miles on the truck which it had leased to Coal Carriers, Inc. He also claimed that CLM Trucking, Inc., had failed to provide an appropriate truck for the coal which it knew that Coal Carriers, Inc., would be hauling. He suggested that he was claiming that CLM Trucking, Inc., had, at the very least, acted negligently. During trial evidence was introduced showing that the odometer reading on the truck involved in the accident was 53,000 miles. Expert evidence of severe wear on the trucks S-cam bushings and bearings adduced by the appellant suggested that the actual mileage on the truck exceeded 100,000 miles and raised the inference that CLM Trucking, Inc., had misrepresented the mileage when it leased the truck to Circle Transport, Inc. There was also evidence that the wear on the S-cam bushings rendered it impossible to adjust the brakes to proper specifications and affected the braking capacity of the truck. Experts for the appellant indicated that insufficient brakes were a cause of the accident. Although CLM Trucking, Inc., offered evidence suggesting that the 53,000 mile reading was correct, Syllabus Point 5 of *Wager v. Sine, supra,* indicates that in assessing the propriety of a directed verdict all inferences should be resolved in favor of the party against whom the verdict is sought. In

resolving the inferences in such a manner here, the Court believes that the appellant presented sufficient evidence to support the submission of this claim against CLM Trucking, Inc., to the jury.

█ It appears that the trial court directed a verdict against the appellant and in favor of Elkay Mining Company on the ground that Elkay Mining Company had breached no duty to the appellant, and that the appellant's own negligence, or comparative negligence, was too great to allow him to recover against Elkay Mining Company. There was evidence that Elkay Mining Company had hazard trained the appellant in accordance with its Federal Mine Safety and Health Administration approved training plan, and the appellant offered no evidence that he was not hazard trained. The appellant on appeal, however, asserts that Elkay negligently failed to train him properly. This was supported by the testimony of the appellant's expert witness, Rex Haynes, to the effect that the appellant was "not properly trained." Dr. Haynes' testimony also proceeded as follows:

Q. ... Do you have an opinion whether the failure to properly hazard train Mr. Harmon was also a proximate cause of his being injured and causing this accident on March 23, 1992?

A. ... I believe if he were properly hazard trained, there may still have been an accident but it couldn't have been this one.

The second ground on which the appellant sought to hold Elkay Mining Company liable was that Elkay Mining Company had negligently failed to provide escape ramps or other adequate road safety structures to protect a driver in the event that he lost control of a vehicle on the haul road. The appellant's evidence clearly showed that there were no escape ramps. Elkay Mining Company, on the other hand, introduced evidence suggesting that escape ramps were unnecessary and that the ditches adjoining the road were adequate safety devices. To counter this, the appellant offered evidence that the ditches would not have stopped a runaway truck. Obviously, the inability of the appellant to stop the truck was a factor which contributed to the accident, and, in light of the conflicting evidence on whether Elkay Mining Company did provide adequate stopping structures, we believe that this question should have gone to a jury.

The appellant next asserted that Elkay Mining Company knew, or should have known, that trucks being used on its property were consistently overloaded and that it was negligent in allowing him to proceed over its road in such a condition. The appellant, however, testified that he alone was responsible for loading his truck and that he did so on the day of the accident. His testimony proceeded as follows:

Q. And all the drivers loaded their own trucks; is that correct?

A. Yes, sir.

Q. And you and you alone determined how much coal went into your truck; didn't you sir?

A. Yes, sir.

Also, John Tyler, a witness for the appellant, testified that the Federal Mine Safety and Health Administration had no law on the weight which could be carried by a truck or the amount of coal which could be hauled by a truck. Apparently the trial court concluded that in view of the fact that the appellant himself loaded the truck on the day of the accident, the liability of Elkay Mining Company could not be predicated upon the load which the appellant was carrying. The Court believes that from the evidence, when all the doubts are construed in favor of the appellant, the jury might have found that Elkay Mining Company had a duty to regulate the amount of coal carried apart from any requirement of the Federal Mine Safety and Health Administration. The question of whether the appellant's own negligence caused or contributed to the accident was, under Syllabus Point 6 of *McAllister v. Weirton Hospital Company, supra,* one for the jury.

As indicated in *Wager v. Sine, supra,* the real question on a motion for a directed verdict is not whether a party's evidence on a point proves that point, but whether, when all inferences are resolved in favor of that party, the evidence possibly could prove the point. Although the evidence in favor of the appellant's claims against Elkay Mining Company was hotly contested, the Court be-

lieves that when the doubts are resolved in the appellant's favor, the evidence possibly could support a verdict for the appellant and that under the circumstances the trial court erred in granting Elkay Mining Company a directed verdict.

For the reasons set forth above, this Court believes that the trial court erred in entering summary judgments in favor of Coal Carriers, Inc., and Circle Transport, Inc., and that the Court also believes that the trial court erred in directing verdicts for CLM Trucking, Inc., and Elkay Mining Company. As a consequence, the judgment of the Circuit Court of Logan County must be reversed, and this case must be remanded for trial.

The Court notes that the appellant makes a number of other assignments of error relating to evidentiary and procedural questions. Since this case must be tried, and since on trial the evidentiary and procedural questions must be revisited, and since it is possible that the trial court will reach different conclusions on those points, this Court believes that it is unnecessary to address all those evidentiary issues here.

For the reasons stated, the various orders of the Circuit Court of Logan County referred to herein are reversed, and this case is remanded for trial.

Reversed and remanded.

McHUGH, J., deeming himself disqualified, did not participate in the decision of this case.

MAYNARD, Justice, dissenting:

I dissent in this case insofar as the majority reverses the circuit court's granting of summary judgment on behalf of the appellant's two possible employers, Coal Carriers, Inc., and Circle Transport, Inc. In finding that the appellant has shown sufficient evidence to circumvent Workers' Compensation immunity, this Court has *yet again* disregarded the plain language of W.Va.Code § 23–4–2(c)(2)(ii) concerning the elements necessary to bring a *Mandolidis* action.

The majority's decision here is consistent with this Court's recent history of ignoring statutory language and allowing employees to sue employers when they allege nothing more than mere negligence. In *Costilow v. Elkay Min. Co.,* 200 W.Va. 131, 488 S.E.2d 406 (1997), this Court reversed summary judgment on behalf of the employer. In *Costilow,* a bulldozer operator with seventeen years of experience lost control of his vehicle while scalping a slope. This accident resulted in his death. It was undisputed that the employee enjoyed a great deal of independent judgment regarding his work, and that he was not requested by his employer to scalp the slope on which the accident occurred. Nevertheless, the majority concluded that "under the circumstances of this action, the appellant should be permitted to include, as part of her 'deliberate intention' theory, an argument to a jury that Elkay, through a pattern of acquiescence, failed to account for [the employee's] safety, in spite of the obvious hazards." *Costilow,* 200 W.Va. at 136, 488 S.E.2d at 411. I dissented in *Costilow,* stating that "[s]uch reasoning disregards W.Va.Code § 23–4–2(c)(2)(iii)(B), concerning the appropriateness of summary judgment when the five elements of deliberate intention are not present." *Id.,* 200 W.Va. at 138, 488 S.E.2d at 413.

In *Blake v. John Skidmore Truck Stop, Inc.,* 201 W.Va. 126, 493 S.E.2d 887 (1997), the employee of a convenience store in Braxton County, West Virginia was stabbed by a robber. The employee sued the owner of the convenience store under the deliberate intention exception to the Workers' Compensation Act. The employee basically alleged there was a total lack of security in the convenience store, and this lack of security caused her injuries. The circuit court directed a verdict for the employer. This Court reversed, concluding that the appellant produced sufficient evidence to prevent a directed verdict under the five-part test of W.Va. Code § 23–4–2(c)(2)(ii). I dissented in *Blake* based on the fact, once again, that the appellant had alleged nothing more than negligence, and stated that "[a] lack of security measures in a convenience store in rural West Virginia, which has the lowest crime rate in the nation, simply does not constitute a specific unsafe working condition with a high degree of risk and a strong probability of serious injury or death."

Likewise, in the instant case, the appellant seeks to hold his employer liable on the

ground that Coal Carriers, Inc. failed to provide for the regular inspection and maintenance of the truck, and did not provide him with appropriate training for operating the truck. Again, this is simply nothing more than an allegation of negligence on the part of the employer and comes nowhere near meeting the requirements of W.Va.Code § 23–4–2(c)(2)(ii).

In my joint dissent in *Costilow* and *Blake*, I emphasized the fact that the Legislature of this State made clear the purpose of the Workers' Compensation system when it stated,

> the establishment of the workers' compensation system ... is intended to remove from the common law tort system all disputes between or among employers and employees regarding the compensation to be received for injury or death to an employee except as herein expressly provided ... *the immunity established in sections six and six-a [§§ 23-2-6 and 23-2-6a], article two of this chapter, is an essential aspect of this workers' compensation system[.]*

W.Va.Code § 23–4–2(c)(1), in part, (emphasis added).

In response to this Court's holding in *Mandolidis v. Elkins Indus., Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978), the Legislature narrowed the standard of deliberate intention by amending W.Va.Code § 23–4–2 (1994) in order to make it more difficult to prove a cause of action under W.Va.Code § 23–4–2.[1] According to W.Va.Code § 23–4–2(c)(1), in part:

> [T]he Legislature intended to create a legislative standard for loss of that immunity of more narrow application and containing more specific mandatory elements than the common law tort system concept and standard of willful, wanton and reckless misconduct ... it was and is the legislative intent to promote prompt judicial resolution of the question of whether a suit prosecuted under the asserted authority of this section is or is not prohibited by the immunity granted under this chapter.

Further, W.Va.Code § 23–4–2(c)(2)(iii)(B) states, in part:

> Notwithstanding any other provision of law or rule to the contrary, and consistent with the legislative findings of intent to promote prompt judicial resolution of issues of immunity from litigation under this chapter, the court shall dismiss the action upon motion for summary judgment if it finds, pursuant to Rule 56 of the Rules of Civil Procedure that one or more of the facts required to be proved by the provisions of subparagraphs (A) through (E) of the preceding paragraph (ii) do not exist[.]

I believe that, in the instant case, the circuit court, in granting summary judgment on behalf of the employer, complied with both the letter and the spirit of the workers' compensation provisions concerning immunity. The circuit court's action was apparently based on its conclusion that the appellant could not show "a violation of a state or federal safety statute, rule or regulation" as required by W.Va.Code § 23–4–2(c)(2)(ii)(C). I believe, in addition, that the evidence fails to show that the employer had "a subjective realization and an appreciation of the existence of ... [a] specific unsafe working condition" as required by W.Va.Code § 23–4–2(c)(2)(ii)(B). Instead, the allegations and supporting evidence set forth by the appellant indicate that his employer may have been negligent in maintaining its trucks. Again, simple negligence, gross negligence, and even *willful, wanton and reckless misconduct* fall short of the very narrow and specific mandatory elements required by W.Va.Code § 23–4–2(c)(2)(ii).

As I stated in my joint dissent in *Costilow* and *Blake*, I suspect that the majority's decision here is motivated, at least in part, by historical antagonism to the immunity provision of the Workers' Compensation Act. This immunity, however, was created by the Legislature and is an integral part of this State's carefully crafted workers' compensation system. By consistently disregarding the language of the immunity provision, this Court

---

**1.** In *Mayles v. Shoney's, Inc.*, 185 W.Va. 88, 405 S.E.2d 15 (1990), however, this Court commented that the Legislature's effort to narrow the parameters of civil liability in W.Va.Code § 23–4–2(c)(2)(ii) had actually broadened the concept of such liability. I take issue with this characterization because I think the Legislature did, in fact, narrow liability.

is, in effect, engaging in judicial legislation. The Legislature has made itself perfectly clear on the issue of immunity, and this Court should reconcile itself to that fact. Because I believe that the circuit court properly granted summary judgment on behalf of the employer in this case, I respectfully dissent.