533 S.E.2d 679

Wilda McCLOUD, Plaintiff
Below, Appellant,

v.

SALT ROCK WATER PUBLIC SERVICE DISTRICT, a Public Corporation and Political Subdivision of the State of West Virginia, and Forrest G. Parsons, Defendants Below, Appellees.

No. 26210.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 25, 2000.

Decided June 21, 2000.

R. Matthew Vital, Esq., Melinda J. Wells, Esq., Vital & Vital, Huntington, West Virginia, Attorneys for Appellant.

Peter Levy, Esq., Robinson, Rice & Levy, Huntington, West Virginia, Attorney for Appellee, Salt Rock Water Public Service District.

Raymond A. Nolan, Esq., Hammers & Nolan, Huntington, West Virginia, Attorney for Appellee, Forrest G. Parsons.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Cabell County entered on January 6, 1999. In this appeal, the appellant and plaintiff below, Wilda McCloud, contends that the circuit court erred by excluding certain hearsay statements and granting judgment as a matter of law in favor of the appellees and defendants below, the Salt Rock Water Public Service District and Forrest G. Parsons, in a trial where she sought recovery for damage to her property following a landslide. The plaintiff claimed that the landslide and resulting damage to her property were caused by the negligence of the defendants.

This Court has before it the petition for appeal, the designated record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is reversed, and this case is remanded for a new trial.

## I.

For several years, Wilda McCloud [hereinafter "McCloud"] lived in a mobile home on a tract of land in Salt Rock, West Virginia. In 1995, a landslide occurred on her property. According to McCloud, the landslide occurred after her neighbor, Forrest Parsons [hereinafter "Parsons"], excavated a steep hillside which adjoined her property for the construction of a new driveway. During the excavation, Parsons removed a tree stump and its root system which were located at the foot of the hill. According to McCloud, the area where the landslide occurred was also saturated with water because of a leak in a water line owned and maintained by the Salt Rock Water Public Service District [hereinafter "Salt Rock PSD"]. McCloud had previously contacted the Salt Rock PSD by letter about the leak and it had been repaired once, but the leak had reappeared. In 1997, allegedly because of the landslide, McCloud's personal property and mobile home were rendered unfit for use because of the back-up of sewage and the permeation of her property with sewage gases.

On April 16, 1997, McCloud filed a complaint in the Circuit Court of Cabell County against Parsons and the Salt Rock PSD. She alleged that Parsons was negligent in excavating his adjoining property and the Salt Rock PSD was negligent in repairing the water line. She claimed that their combined negligence resulted in the landslide which damaged her property.

The case proceeded to a jury trial on October 29, 1998. At the close of McCloud's case-in-chief, the circuit court granted judgment as a matter of law in favor of Parsons and the Salt Rock PSD. The circuit court found that McCloud had failed to establish a prima facie case of negligence against either defendant. On January 6, 1999, the circuit court denied McCloud's motion for a new trial. This appeal followed.

## II.

McCloud first assigns as error the circuit court's finding that a statement made by an employee of the Salt Rock PSD was inadmissible hearsay. Generally, this Court reviews evidentiary rulings of a circuit court under an abuse of discretion standard. We have stated that:

> The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence ... are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syllabus Point 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995). More recently, we held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syllabus Point 4, *State v. Rodoussakis*, 204 W.Va. 58, 511 S.E.2d 469 (1998).

During her trial testimony, McCloud testified that while an employee of the Salt Water PSD was attempting to repair the water leak on her property in May 1995, he stated, "There is such a deep hole, I can't touch it." Counsel for the Salt Rock PSD objected to this statement as hearsay, and the court sustained the objection and instructed the jury to disregard that evidence. McCloud asserts that the statement constituted an admission by a party opponent because it was made by an employee of the Salt Rock PSD and therefore, was admissible evidence. We agree.

Rule 801(d)(2) of the West Virginia Rules of Evidence provides that an admission by a party-opponent is a statement which is not hearsay and thus, is admissible as substantive evidence. In particular, W.Va. R.Evid. 801(c)(2)(D), provides that "a statement by the party's agent or servant concerning a matter within the scope of the

agency or employment, made during the existence of the relationship" is an admission by a party-opponent. This rule was also set forth in Syllabus Point 3 of *Canterbury v. West Virginia Human Rights Comm'n*, 181 W.Va. 285, 382 S.E.2d 338 (1989):

> A statement is not hearsay if the statement is offered against a party, and is a statement by his [or her] agent or servant concerning a matter within the scope of his [or her] agency or employment, made during the existence of the relationship. *W.Va.R.Evid.* 801(d)(2)(D).

In this case, when the statement in question was made, the employee was acting as an agent/servant of the Salt Rock PSD. The statement was obviously within the scope of his employment as it concerned the water line which he was attempting to repair. Consequently, the statement was admissible.

McCloud claims that this statement was not only admissible but was critical evidence because it showed that the water line was not properly repaired by the Salt Rock PSD. Clearly, the evidence was relevant and the jury should have been given the opportunity to consider and weigh it in light of the other testimony and evidence presented at trial. Consequently, we find that the circuit court erred by excluding the statement as hearsay.

 We also find that the circuit court erred by granting judgment as a matter of law in favor of Parsons and the Salt Rock PSD. This Court has often stated that "[u]pon a motion for a directed verdict,[1] all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed." Syllabus Point 5, *Wager v. Sine*, 157 W.Va. 391, 201 S.E.2d 260 (1973) (footnote added). In Syllabus Point 2 of *Brannon v. Riffle*, 197 W.Va. 97, 475 S.E.2d 97 (1996), we further explained that:

> "'"Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety,

must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence." Syllabus, *Nichols v. Raleigh–Wyoming Coal Co.*, 112 W.Va. 85[, 163 S.E. 767 (1932) ].' Point 1, Syllabus, *Jenkins v. Chatterton*, 143 W.Va. 250[, 100 S.E.2d 808] (1957)." Syl. Pt. 1, *Jividen v. Legg*, 161 W.Va. 769, 245 S.E.2d 835 (1978).

We also set forth our standard of review for the granting of a motion for a directed verdict in Syllabus Point 3 of *Brannon:*

> The appellate standard of review for the granting of a motion for a directed verdict pursuant to Rule 50 of the West Virginia Rules of Civil Procedure is de novo. On appeal, this court, after considering the evidence in the light most favorable to the nonmovant party, will sustain the granting of a directed verdict when only one reasonable conclusion as to the verdict can be reached. But if reasonable minds could differ as to the importance and sufficiency of the evidence, a circuit court's ruling granting a directed verdict will be reversed.

At the close of McCloud's case-in-chief, the circuit court granted judgment as a matter of law in favor of the defendants. The ruling was based on the circuit court's finding that McCloud had failed to establish a prima facie case of negligence against either of the defendants. McCloud maintains that she offered expert testimony which established the cause of the land slippage and questioned the reasonableness of the actions of the defendants.

 In Syllabus Point 2 of *McCabe v. City of Parkersburg*, 138 W.Va. 830, 79 S.E.2d 87 (1953), this Court recognized that "[a] landowner is entitled, *ex jure naturae*, to lateral support in the adjacent land for his soil." At the same time, we also stated that the owner of a building has no right of support from the land of adjacent owners. In other words, an adjacent owner is only strictly liable for acts of omission or commis-

---

1. We note that Rule 50 of the West Virginia Rules of Civil Procedure was amended in 1998, and the term "directed verdict" was replaced with the phrase "judgment as a matter of law." "The amendment did not, however, affect either

the standard by which a trial court reviews motions under the rule or the standard by which an appellate court reviews a trial court's ruling." *Barefoot v. Sundale Nursing Home*, 193 W.Va. 475, 482 n. 7, 457 S.E.2d 152, 159 n. 7 (1995).

sion that result in the withdrawal of lateral support to his or her neighbor's property in its natural state. *Noone v. Price*, 171 W.Va. 185, 188, 298 S.E.2d 218, 221 (1982). Thus, "[a]n action to recover damages for the loss of lateral support for a building cannot be maintained in the absence of negligence on the part of the party depriving such building of its lateral support." Syllabus Point 3, *McCabe*.

▬ *McCabe* was an action of trespass on the case brought by a property owner against the City of Parkersburg for damages for the undermining and sloughing away of her lot and the settling of her dwelling house allegedly caused by the discharge of water from the City's sewerage system onto her property. In discussing the liability of the City, this Court stated that "[a] municipality, in the maintenance of its sewerage system, owes only the duty of reasonable care to avoid damage to the property of others." Syllabus Point 4, *McCabe*. Although the case *sub judice* relates to the maintenance of water lines, the same standard of care is applicable. Like a municipality, a public service district is a public corporation and political subdivision of this State. W.Va.Code § 16–13A–3 (1997). In addition, W.Va.Code 29–12A–4(c)(3) (1986) imposes liability for damages caused by a political subdivision's "negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance[.]"[2]

▬ In this case, McCloud alleged that Parsons was negligent in excavating his land for a new driveway and the Salt Rock PSD was negligent in repairing its water line. McCloud asserted that as a result of their combined negligence, a landslide occurred which damaged her sewerage system and ultimately destroyed her trailer. At trial, McCloud presented testimony from Craig Lyle, a civil engineer. Lyle testified as follows:

[W]hen we did our analysis, we looked at the saturation from the top of the slope to the septic system and we found that you shouldn't have a failure. We looked at saturation of the bottom of the slope from a leaking water line, because there was a leaking water line that occurred here. And combining those two saturation zones, the factor of safety came up that it was below one, depending on what parameter you used for the friction angle and the material between them, the saturation zones. So that meant that you could alone, if you had a leaking water line, that that could have caused the slope displacement. But the other side is it's marginal. So it could have. You get a factor of safety below and you also get a factor of safety above. Not too much above, but it's possible.

And then we look at can an excavation alone in combination of the saturation and hill slope cause a landslide. And that would be the case of Mr. Parsons' excavation that he did at the toe of the slope. And with excavation and saturation of the top, that shouldn't cause a landslide either. It's the factor of safety above one. It's not a great factor of safety, but it's—it's above it. It's not as likely to occur.

But if you combined the two, if you combine a saturated slope from a leaking water line with excavation, then your factor of safety is substantially lower than one and, you know, it's pretty much of reasonable degree of engineering certainty, you will have a landslide. And that's—that's one of the conclusions we came to, was the combination here.

And then the information, the dates as to when things occurred become critical. And the information that we have is that those dates lined up as far as what when excavation was done and when this slope failure occurred.

Lyle also testified that despite heavy rainfall in prior years, McCloud's trailer had been on

**2.** In *Calabrese v. City of Charleston*, 204 W.Va. 650, 515 S.E.2d 814 (1999), we discussed the meaning of the term "aqueduct" as set forth in W.Va.Code § 29–12A–4(c)(3). We stated that "the somewhat archaic term 'aqueduct' is used (mostly in older cases) to denote various sorts of conduits or channels for water—from ditches in the earth to tunnels, canals, or pipes. *See, e.g., State ex rel. West Virginia Sand & Gravel Co. v. Royal Indemnity Co.*, 99 W.Va. 277, 286, 128 S.E. 439, 442 (1925) (the term 'aqueduct' is used to denote a masonry structure supplying fresh water to a city water system)." *Calabrese*, 204 W.Va. at 657, 515 S.E.2d at 821.

459

stable land until the landslide occurred. Thus, it was apparent that McCloud's land in its natural state was able to support her trailer. In fact, it had done so for twenty-seven years.

Based on Lyle's testimony and the other evidence presented by McCloud, this Court finds that when all doubts are resolved in her favor, the evidence could support a verdict for McCloud. We believe that reasonable minds could differ as to the importance and sufficiency of the evidence. As we have previously noted, "the real question on a motion for a directed verdict is not whether a party's evidence on a point proves that point, but whether, when all inferences are resolved in favor of that party, the evidence possibly could prove the point." *Harmon v. Elkay Mining Co.*, 201 W.Va. 747, 754, 500 S.E.2d 860, 867 (1997) (citation omitted). Accordingly, we find that the circuit court erred in granting judgment as a matter of law in favor of Parsons and the Salt Rock PSD.

Therefore, for the reasons set forth above, the final order of the Circuit Court of Cabell County entered on January 6, 1999, is reversed, and this case is remanded for a new trial.

Reversed and remanded.