515 S.E.2d 814

**William Joseph CALABRESE and Debra Calabrese, Plaintiffs,**

**v.**

**The CITY OF CHARLESTON, a municipal corporation, Defendant.**

No. 25430.

Supreme Court of Appeals of West Virginia.

Submitted March 9, 1999.

Decided May 13, 1999.

652

Michael J. Del Giudice, Esq., Ciccarello, Del Giudice & LaFon, Charleston, West Virginia, Attorney for Plaintiffs.

G. Kenneth Robertson, Esq., Brian D. Morrison, Esq., Shuman, Annand, Bailey, Wyant & Earles, Charleston, West Virginia, Attorneys for Defendant.

STARCHER, Chief Justice:

In this decision, we address certified questions from the Circuit Court of Kanawha County. We agree with the circuit court's determination that a Charleston couple may proceed in a lawsuit in which they claim that their basement was repeatedly flooded because of the City of Charleston's alleged

failure to use due care in the operation and maintenance of the City's sewer system.

## I.

### Facts and Background

The instant case involves a claim of immunity made by the City of Charleston, West Virginia ("the City") in a lawsuit in the Circuit Court of Kanawha County. The lawsuit was filed against the City by the plaintiffs, William and Debra Calabrese ("the Calabreses").

The Calabreses' lawsuit claims that the City was negligent in the maintenance and operation of the City's sewer system, and that such negligence caused injury to the Calabreses and their property.

Specifically, the Calabreses allege that the City was or should have been aware of ob-structions and defects in the City's sewer system, and that the City did not exercise due care to correct these obstructions and defects. As a result, say the Calabreses, water and sewage up to 20 inches deep have backed up into the Calabreses' basement on at least five occasions, causing substantial damage to their carpets, furniture, etc.

In response to the Calabreses' lawsuit, the City argued to the circuit court that if one assumes *arguendo* that the Calabreses are factually and legally correct in their allegations of negligence, proximate causation, and damages, the City is nevertheless immune from the Calabreses' lawsuit—by virtue of the Governmental Tort Claims and Insurance Reform Act, *W.Va.Code*, 29–12A–1 to –18.

Specifically, the City relies upon provisions contained in *W.Va.Code*, 29–12A–4 [1986] [1] and –5 [1986].[2]

1. *W.Va.Code*, 29–12A–4 [1986] states:

    (a) The distinction existing between governmental functions and proprietary functions of political subdivisions is not affected by the provisions of this article; however, the provisions of this article shall apply to both governmental and proprietary functions.

    (b)(1) Except as provided in subsection (c) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function: Provided, That this article shall not restrict the availability of mandamus, injunction, prohibition, and other extraordinary remedies.

    (2) Subject to statutory limitations upon their venue and jurisdiction, the circuit courts have jurisdiction to hear and determine civil actions governed by or brought pursuant to this article.

    (c) Subject to sections five and six of this article, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

    (1) Except as otherwise provided in this article, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any vehicle by their employees when the employees are engaged within the scope of their employment and authority.

    (2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.

    (3) Political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance, except that it is a full defense to such liability, when a bridge within a municipality is involved, that the municipality does not have the responsibility for maintaining or inspecting the bridge.

    (4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used by such political subdivisions, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility.

    (5) In addition to the circumstances described in subdivisions (1) to (4), subsection (c) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a provision of this code. Liability shall not be construed to exist under another section of this code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued.

2. *W.Va.Code*, 29–12A–5 [1986] states:

    (a) A political subdivision is immune from liability if a loss or claim results from:

# 654

The City also claims that it is immune from suit pursuant to the provisions of Section 25–17 of the *Charleston City Code*.[3]

Following the filing of a motion for summary judgment by the City asserting the City's claims of immunity, the circuit court certified four questions to this Court. Those questions, and the circuit court's answers to the questions, are as follows:

1. When the plaintiffs' claim against the City of Charleston arises from an alleged clogged, blocked or negligently designed/maintained City sewer line and/or storm drain, does the plaintiffs' claim fall within § 29–12A–4(c)(3) of the Governmental Tort Claims and Insurance Reform Act (hereinafter "the Act"), stating "political subdivisions

(1) Legislative or quasi-legislative functions;
(2) Judicial, quasi-judicial or prosecutorial functions;
(3) Execution or enforcement of the lawful orders of any court;
(4) Adoption or failure to adopt a law, including, but not limited to, any statute, charter provision, ordinance, resolution, rule, regulation or written policy;
(5) Civil disobedience, riot, insurrection or rebellion or the failure to provide, or the method of providing, police, law enforcement or fire protection;
(6) Snow or ice conditions or temporary or natural conditions on any public way or other public place due to weather conditions, unless the condition is affirmatively caused by the negligent act of a political subdivision;
(7) Natural conditions of unimproved property of the political subdivision;
(8) Assessment or collection of taxes lawfully imposed or special assessments, license or registration fees or other fees or charges imposed by law;
(9) Licensing powers or functions including, but not limited to, the issuance, denial, suspension or revocation of or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authority;
(10) Inspection powers or functions, including failure to make an inspection, or making an inadequate inspection, of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety;
(11) Any claim covered by any workers' compensation law or any employer's liability law;
(12) Misrepresentation, if unintentional;
(13) Any court-ordered or administratively approved work release or treatment or rehabilitation program;

are liable for injury ... or loss to persons or property that is caused by their negligent failure to keep public ... aqueducts, ... within the political subdivision open, in repair or free from nuisance ..." thereby constituting an exception to the immunity generally provided to political subdivisions in § 29–12A–4(b)(1) of the Act?

Ruling by the Circuit Court: Yes _X_ No __

2. If the plaintiffs' claim against the City of Charleston in this case falls within § 29–12A–4(c)(3), does the claim, in turn, fall within the specific exception to liability set forth in § 29–12A–5(a)(16) providing that "a political subdivision is immune from liability if a

(14) Provision, equipping, lawful operation or maintenance of any prison, jail or correctional facility, or injuries resulting from the parole or escape of a prisoner;
(15) Any claim or action based on the theory of manufacturer's products liability or breach of warranty or merchantability or fitness for a specific purpose, either expressed or implied;
(16) The operation of dumps, sanitary landfills, and facilities where conducted directly by a political subdivision; or
(17) The issuance of revenue bonds or the refusal to issue revenue bonds.
(b) An employee of a political subdivision is immune from liability unless one of the following applies:
(1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
(2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
(3) Liability is expressly imposed upon the employee by a provision of this code.
(c) The immunity conferred upon an employee by subsection (b) of this section does not affect or limit any liability of a political subdivision for an act or omission of the employee.

3. *Charleston City Code*, Section 25–17 states:

Neither the City nor the Sanitary Board shall be liable for any damage resulting from bursting of any sewer main, service pipe or valve, or from discontinuing the operation of its sewer collection, treatment and disposal facilities, for repairs, extensions or connections, or from the accidental failure of the sewage collection, treatment and disposal facilities from any cause whatsoever ....

loss or claim results from [t]he operation of dumps, sanitary landfills, and facilities where conducted directly by a political subdivision?"

Ruling by the Circuit Court: Yes ___ No X

3. If the plaintiffs' claim against the City of Charleston in this case falls with § 29–12A–4(c)(3), does the claim, in turn, fall within the exception to liability set forth in § 29–12A–5(a)(10) providing that "a political subdivision is immune from liability if a loss or claim results from [i]nspection powers or functions, including failure to make an adequate inspection, or making an inadequate inspection, of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety"?

Ruling by the Circuit Court: Yes ___ No X

4. Is § 25–17 of the Charleston City Code, providing that "neither the City nor the Sanitary Board shall be liable for any damage resulting from bursting of any sewer main, service pipe or valve . . . or from the accidental failure of the sewage collection, treatment and disposal facilities from any cause whatsoever . . ." a valid and enforceable exercise of municipal power and authority pursuant to W.Va.Code § 8–20–10, thereby insulating the City from suit in this case?

Ruling by the Circuit Court: Yes ___ No X

We proceed by identifying the applicable standard of review. We then discuss the issues of liability and immunity.

## II.

### Standard of Review

■ The appellate standard of review of questions of law answered and certified by a

circuit court is *de novo*. Syllabus Point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996).

## III.

### Discussion

#### A.

##### The Liability– and Immunity– Creating Statutes at Issue in the Instant Case

There are two liability-creating provisions of *W.Va.Code*, 29–12A–4(c) [1986] that may be read to apply to the Calabreses' claim against the City.

The first of these two provisions, *W.Va. Code*, 29–12A–4(c)(2) [1986], creates general "negligent act" liability for political subdivisions, stating that:

Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.

(*See* note 1, *supra*, for the full text of *W.Va. Code*, 29–12A–4 [1986]).

■ This statutory provision was not referred to by the circuit court in its certified questions. However, because this provision is germane to the issues of liability and immunity in the instant case, we discuss it briefly at III.B.1. *infra.*[4]

The second liability-creating statutory provision, *W.Va.Code*, 29–12A–4(c)(3) [1986]— the provision that is referenced by the circuit court in its certified questions—states that:

Political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance. . . .

4. In certified question cases, we are not limited to the formulation of the issues that was made by the circuit court. This Court has "traditionally maintained that upon receiving certified questions we retain some flexibility in determining

how and to what extent they will be answered." *City of Fairmont v. Retail, Wholesale, & Department Store Union*, 166 W.Va. 1, 3–4, 283 S.E.2d 589, 590 (1980).

(*See* note 1, *supra*, for full text of *W.Va.Code*, 29–12A–4 [1986]).[5] We discuss this provision as well at III.B.2. *infra*.

The City's position is that neither of these liability-creating provisions of *W.Va.Code*, 29–12A–4 [1986] are implicated by the allegations in the Calabrese lawsuit.

The City further argues that even if provisions of *W.Va.Code*, 29–12A–4 [1986] do impose potential liability on the City—nevertheless, 2 of the 17 specific immunity-creating provisions of *W.Va.Code*, 29–12A–5(a) [1986] eliminate any such liability.[6]

The first of these two provisions, *W.Va. Code*, 29–12A–5(a)(10) [1986], creates "inspection" immunity, stating that:

A political subdivision is immune from liability if a loss or claim results from: . . . [i]nspection powers or functions, including failure to make an inspection, or making an inadequate inspection, of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety[.]

(*See* the full text of *W.Va.Code*, 29–12A–5 [1986] at note 2 *supra* ). We discuss this provision at III.C. *infra*.

The second provision that is relied on by the City, *W.Va.Code*, 29–12A–5(a)(16) [1986], creates "landfill" immunity, stating that:

A political subdivision is immune from liability if a loss or claim results from . . . [t]he operation of dumps, sanitary landfills, and facilities where conducted directly by a political subdivision[.]

(*See* note 2, *supra*, for full text of *W.Va.Code*, 29–12A–5 [1986] ). We also discuss this provision at III.C. *infra*.

In determining whether the foregoing statutory provisions regarding liability and immunity bar the Calabreses from maintaining their lawsuit against the City, this Court applies the principle that:

"The general rule of construction in governmental tort legislation cases favors liability, not immunity. Unless the legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail." Syllabus Point 2, *Marlin v. Bill Rich Const., Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996).

Syllabus Point 1, *Brooks v. City of Weirton*, 202 W.Va. 246, 503 S.E.2d 814 (1998). *See also Randall v. Fairmont City Police Dept.*, 186 W.Va. 336, 347, 412 S.E.2d 737, 748 (1991); *Hose v. Berkeley County Planning Com'n*, 194 W.Va. 515, 522, 460 S.E.2d 761, 768 (1995); *Parkulo v. West Virginia Bd. of Probation and Parole*, 199 W.Va. 161, 174, 483 S.E.2d 507, 520 (1996).[7]

### B.

### Liability Provisions

### 1.

### Negligent Act Liability

The applicability of the "negligent act" liability provision of *W.Va.Code*, 29–12A–4(c)(2) [1986] to the Calabreses' claim seems clear and straightforward.

*W.Va.Code*, 29–12A–4(c)(2) [1986] creates liability by political subdivisions for "injury, death, or loss to persons or property caused

---

**5.** *W.Va.Code*, 29–12A–4(c)(3) [1986] is one of two "public property" liability provisions; the other is *W.Va.Code*, 29–12A–4(c)(4) [1986], creating liability relating to public buildings. *"W.Va.Code, 29–12A–4(c)(3) and (4) (1986), permit liability claims to be filed against a political subdivision for injuries or death arising from the negligent failure to maintain its property." Stamper v. Kanawha County Bd. of Educ.,* 191 W.Va. 297, 298–299, 445 S.E.2d 238, 239–240 (1994) (emphasis added). *See* full text of *W.Va.Code*, 29–12A–4 [1986] at note 1 *supra*.

**6.** "[*W.Va.*] *Code* section 29–12A–5 (1992) lists seventeen specific situations in which a political subdivision is immune from liability." *Moore v.*

*Wood County Bd. of Educ.*, 200 W.Va. 247, 250, 489 S.E.2d 1, 4 (1997) (*per curiam.*) "[T]he legislature has 'specified seventeen instances in which political subdivisions would have immunity from tort liability.'" *Koffler v. City of Huntington*, 196 W.Va. 202, 204 n. 2, 469 S.E.2d 645, 647 n. 2, (1996), quoting *O'Dell v. Town of Gauley Bridge*, 188 W.Va. 596, 600, 425 S.E.2d 551, 555 (1992).

**7.** Thus, as a general rule, the liability-creating provisions of *W.Va.Code*, 29–12A–4 [1986] are to be broadly construed, and the immunity-creating provisions of *W.Va.Code*, 29–12A–5 [1986] are to be narrowly construed. *Marlin v. Bill Rich Const., Inc., supra.*

by the negligent performance of acts by their employees while acting within the scope of employment." *Id.*

The Calabreses assert that the City's employees, acting within the scope of their employment, negligently performed their duties with respect to the City's storm sewer system—and that the Calabreses were proximately injured by such negligence.

Therefore, if the Calabreses can prove this to be the case, *W.Va.Code,* 29–12A–4(c)(2) [1986] imposes liability on the City for the damages caused by its employees' "negligent performance," unless a specific immunity applies. (We discuss the immunity issue in part III.C. *infra.*)

2.

*Public Property Liability*

■ *W.Va.Code,* 29–12A–4(c)(3) [1986] imposes liability for damages caused by a political subdivision's "negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, *aqueducts,* viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance . . . ." (Emphasis added.)

The Calabreses contend that the City's sewers are included within the term "aqueduct"—and that therefore this liability provision applies to the Calabreses' claim.

In support of this contention, the Calabreses direct us to the dictionary definition of the word "aqueduct"—which is "a conduit for water." *Merriam Webster's Collegiate Dictionary* (1996). *See also Random House Dictionary of the English Language* (1966) ("aqueduct" means "a conduit or artificial channel for conducting water from a distance, usually by means of gravity.")

The Calabreses contend that because the City's sewers are a conduit and channel for rainwater runoff (and other excess or waste water), the sewers are included within the ambit of the statutory term "aqueduct," as that term is defined in the dictionary.

Therefore, say the Calabreses, because the statute includes "aqueducts" as one of the kinds of public grounds, ways, and courses covered by the provisions of *W.Va.Code,* 29–

12A–4(c)(3) [1986], the City is not immune from suit in the instant case.

In law, the somewhat archaic term "aqueduct" is used (mostly in older cases) to denote various sorts of conduits or channels for water—from ditches in the earth to tunnels, canals, or pipes. *See, e.g., State ex rel. West Virginia Sand & Gravel Co. v. Royal Indemnity Co.,* 99 W.Va. 277, 286, 128 S.E. 439, 442 (1925) (the term "aqueduct" is used to denote a masonry structure supplying fresh water to a city water system).

The City contends that the term "aqueduct" means only conduits or channels that supply "fresh water."

The City says that the term "aqueduct" cannot be read to include conduits or channels that direct, divert, or carry away water flows like storm water, rainwater, or water that has been used for washing, toilet flushing, industrial or agricultural uses, etc. The City points out that such conduits or channels are commonly referred to as "drains" or "sewers," not "aqueducts."

However, the legal rights, duties, and characteristics associated with a conduit or channel that is referred to as an "aqueduct" are generally identical to those that are associated with a conduit or channel that is referred to as a "drain" or "sewer." *Cf. Pifer v. Brown,* 43 W.Va. 412, 417–423, 27 S.E. 399, 401–403 (1897) (both "drains" and "aqueducts" are commonly pipes or channels in or under the ground). *Cf. also Miller v. Skaggs,* 79 W.Va. 645, 648–649, 91 S.E. 536, 537 (1917) (". . . the mere fact that a drain or aqueduct may be concealed from casual vision will not prevent it from being apparent in the sense in which that word is used.")

As the court stated in *Martin v. Louisiana Public Utilities Co., Inc.,* 13 La.App. 181, 183, 127 So. 470, 471 (1930):

"In the sense that they are both water conduits, an aqueduct and a sewer may be said to be much the same as far as their construction is concerned . . . the Civil Code . . . uses the term 'sewer or aqueducts' as convertible or equivalent to each other."

■ We recently discussed *W.Va.Code,* 29–12A–4(c)(3) [1986] in Syllabus Point 3 of

**658**

*Koffler v. City of Huntington*, 196 W.Va. 202, 469 S.E.2d 645 (1996), where we stated:

Under *W.Va.Code*, 29–12A–4(c)(3) [1986], political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance, except that it is a full defense to such liability, when a bridge within a municipality is involved, that the municipality does not have the responsibility for maintaining or inspecting the bridge. A political subdivision's duty to keep its public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds open, in repair, or free from nuisance does not extend exclusively to vehicles or vehicular travel.

In *Koffler*, a circuit court ruled that *W.Va. Code*, 29–12A–4(c)(3) [1986] did not permit the City of Huntington to be held liable for damages caused by the City's alleged negligence for having wide, unprotected gaps in a storm sewer drain cover in an alley. The drain cover allegedly trapped the tire of a bicycle, causing the bicycle rider to be injured.

The circuit court in *Koffler* ruled that the liability provisions of *W.Va.Code*, 29–12A–4(c)(3) [1986] applied narrowly only to injuries occurring in the course of "vehicular travel" on a public roadway; and that bicycle travel was not "vehicular" travel—because bicycles are not considered vehicles for purposes of other provisions of the *West Virginia Code*. 196 W.Va. at 204, 469 S.E.2d at 647. This Court reversed both of the circuit court's rulings. We held that the circuit court's narrow reading of the liability created by 29–12A–4(c)(3) [1986] was erroneous, and that the City of Huntington was not immune from suit.

At common law, this Court's decisions going back over 100 years have recognized the liability of political subdivisions in West Virginia for injuries arising out of the negligent

maintenance and operation of drains and sewers.[8]

For example, in Syllabus Point 7 of *Clay v. City of St. Albans*, 43 W.Va. 539, 27 S.E. 368 (1897), we stated:

If a city or town negligently fails to keep its existing drains and gutters open and clear of obstructions, and in condition to carry off the water in them, and by reason thereof land is injured from their overflow, the city or town is liable in damages, provided the overflow is not due to an unusual or extraordinary storm or rainfall.

And in Syllabus Point 4 of *McCabe v. City of Parkersburg*, 138 W.Va. 830, 79 S.E.2d 87 (1953), we stated:

A municipality, in the maintenance of its sewerage system, owes only the duty of reasonable care to avoid damage to the property of others.

Summarizing the foregoing discussion, we observe as follows:

First, the statutory term "aqueduct," according to its customary dictionary definition, may be read to include conduits and channels for water like sewers and drains. Such a reading is not inconsistent with other legal principles regarding such conduits and channels.

Second, *W.Va.Code*, 29–12A–4(c)(3) [1986], which creates liability for injuries arising from negligence in connection with public property, covers a wide and inclusive array of public lands, ways, and grounds. We give such language a broad construction that favors liability, unless the Legislature has explicitly and specifically created immunity. *Marlin v. Bill Rich Const., Inc., supra.* See also *Koffler, supra.*

Third, a construction of the statute that recognizes the potential liability of political subdivisions for damages resulting from lack of due care in connection with public sewers and drains is consistent with the historic common law of this State. *Clay* and *McCabe, supra.*

■ For the foregoing reasons, we determine that the term "aqueduct" in *W.Va.Code*,

---

**8.** We strictly construe statutory language that derogates common-law liability. *Stamper v. Ka-* *nawha County Bd. of Educ.*, 191 W.Va. 297, 300, 445 S.E.2d 238, 241 (1994).

29–12A–4(c)(3) [1986] may be permissibly construed to include the City's sewer system. We hold that the liability for political subdivisions created in *W.Va.Code*, 29–12A–4(c)(3) [1986] includes liability for injury, death, or loss to persons or property caused by a subdivision's negligent failure to keep its sewers and drains open, in repair, or free from nuisance. Consequently, the claims made by the Calabreses against the City fall within the potential liability established in *W.Va.Code*, 29–12A–4(c)(3) [1986], unless a specific immunity applies.

## C.

### *Immunity Provisions*

Having established that the provisions of *W.Va.Code*, 29–12A–4(c)(2) and (3) [1986] create potential liability for the City under the allegations made by the Calabreses, we next turn to the two specific immunities in *W.Va. Code*, 29–12A–5(a) [1986] that the City says nevertheless create immunity for the City.

■ The first of those exceptions, *W.Va. Code*, 29–12A–5(a)(10) [1986], states that:

(a) A political subdivision is immune from liability if a loss or claim results from: . . .

(10) Inspection powers or functions, including failure to make an inspection, or making an inadequate inspection, of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety[.]

The City argues that the Calabreses' lawsuit is based on an allegedly "negligent inspection" of its sewer by the City. Specifically, the Calabreses allege that after a City "inspection" found that a sewer was apparently blocked, the City did not take action to correct the blockage.

The City contends that pursuant to *W.Va. Code*, 29–12A–5(a)(10) [1986], the City is specifically immune from liability arising out of a negligent "inspection" of the City's sewer system.

To our reading, *W.Va.Code*, 29–12A–5(a)(10) [1986] is intended to immunize a political subdivision from claims arising out of the subdivision's negligent inspection of the properties of third parties, not from claims arising out of the subdivision's negligent inspection of the subdivision's own property.

Such inspections of third-party property, of course—by fire inspectors, building inspectors, and the like—are common governmental duties.

If we were to give this language the broad reading that the City suggests, a political subdivision would be immunized from liability arising out of any injurious conditions on any of its property (public roads, bridges, etc.)—regardless of the subdivision's negligence in creating or tolerating those conditions—if the subdivision had at some previous time failed to properly inspect its own property, or to properly follow up on an inspection and correct a problem on the subdivision's own property.

Therefore, such an immunity would effectively nullify most if not all liability arising out of negligently-caused dangerous and injurious conditions on a subdivision's property.

Given the explicit legislative creation and recognition of subdivision liability for such conditions, we doubt that eviscerating such liability was the legislative intent—in providing for "inspection" immunity.

■ Therefore, we hold that *W.Va.Code*, 29–12A–5(a)(10) [1986] does not immunize a political subdivision from liability arising out of negligently-caused dangerous, injurious, or harmful conditions on the subdivision's own property.

■ We next turn to the second statutory immunity that is asserted by the City, *W.Va. Code*, 29–12A–5(a)(16) [1986], stating that:

(a) A political subdivision is immune from liability if a loss or claim results from: . . .

(16) The operation of dumps, sanitary landfills, and facilities where conducted directly by a political subdivision[.]

To find that this language immunizes the City for negligently-caused injuries arising from its sewer system, the City asks us to take a three-step reasoning approach.

**660**

First, the City asks us to read into the statute, before the word "facilities," the word "sanitary." [9] Thus modified, this provision would immunize: "the operation of dumps, sanitary landfills, and sanitary facilities." Second, the City asks us to agree that the City's sewer system is a kind of "sanitary facility." Third, the City asks us to complete the syllogism and conclude that because the City's sewer system is an immunized "sanitary facility," the City is immune from all sewer-related liability.

The City's argument, if we accepted it, would require us to read *W.Va.Code*, 29–12A–5(a)(16) [1986] as including not just landfill- and dump-related facilities—but as also extending immunity to all publicly-operated buildings, structures, fixtures, or contrivances—of whatever nature and wherever located—that could be classified as "sanitary facilities." Such a reading would create a broad, amorphous, and highly uncertain area of immunity. [10]

We decline to adopt such a broad reading. Rather, we view the immunity that is created by *W.Va.Code*, 29–12A–5(a)(16) [1986] as relating to sanitary landfills and dumps that are operated by political subdivisions—and to associated facilities that are located on and operated in connection with the dump or sanitary landfill.

Therefore, we hold that *W.Va.Code*, 29–12A–5(a)(16) [1986] does not immunize a political subdivision from liability arising out of negligently-caused dangerous, injurious, or harmful conditions in or arising out of the subdivision's sewer system, except insofar as the sewers are located on and a part of the operation of a dump or sanitary landfill by the subdivision.

### D.

*The City's Ordinance*

The City also argues that it is immune from the Calabreses' lawsuit because of City Ordinance 25–17, that purports to create immunity for claims arising out of the operation of the City's sewer system.

The ordinance states:

Neither the City nor the Sanitary Board shall be liable for any damage resulting from bursting of any sewer main, service pipe or valve, or from discontinuing the operation of its sewer collection, treatment and disposal facilities, for repairs, extensions or connections, or from the accidental failure of the sewage collection, treatment and disposal facilities from any cause whatsoever . . .

In *Brackman's, Inc. v. City of Huntington*, 126 W.Va. 21, 35, 27 S.E.2d 71, 78 [1943], this Court said:

Attached to every statute, every charter, every ordinance or resolution affecting, or adopted by, a municipality, is the implied condition that the same must yield to the

**9.** The City says that one must read some sort of modifying word into *W.Va.Code*, 29–12A–5(a)(16) [1986]—before the word "facilities"—because without a modifier that defines what sort of facilities the statute is talking about, "facilities" does not have a clear meaning.

The City suggests borrowing the word "sanitary" as a modifier from the previous two-word phrase, "sanitary landfills." However, the phrase "sanitary landfill" is a term of art, denoting what was "formerly known by its more prosaic name as a garbage dump . . . ." *Mountaineer Disposal Service, Inc. v. Dyer*, 156 W.Va. 766, 769, 197 S.E.2d 111, 113 (1973), and the word "sanitary" does not function as an ordinary modifying adjective in that phrase. *See, e.g., W.Va. Code*, 7–1–3e [1988] ("Acquisition of land for, and operation of, public refuse dumps and sanitary landfills.")

As we note in the text, it is not reasonable to expand the statute's ambit of immunity to include all "sanitary facilities," of whatever nature and wherever located, based upon the use of the term of art "sanitary landfill" in the statute.

Assuming that there is a need for reading a modifying word into the statutory provision to give a more specific meaning to the term "facilities," there is a simpler, narrower and more logical reading of the statute, if the logically implied word "associated" is inserted before the word "facilities." Under such a reading, the provision immunizes "the operation of dumps, sanitary landfills, and associated facilities."

**10.** The reading of the statutory language *in W.Va. Code*, 29–12A–5(a)(16) [1986] that is proposed by the City would arguably require us to overrule *Koffler, supra*—because the bicyclist in that case was injured by the condition of a cover grate on a storm sewer. According to the City's suggested reading of the statute, such a grate would be part of a "sanitary facility."

 

predominant power of the State, when that power has been exercised.

 We have furthermore stated that:

A municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If any reasonable doubt exists as to whether a municipal corporation has a power, the power must be denied.

Syllabus Point 2, *State ex rel. Charleston v. Hutchinson,* 154 W.Va. 585, 176 S.E.2d 691 (1970).

The City argues that its "sewer immunity" ordinance is essentially complementary to and co-extensive with the immunity for sewer systems that the City urges us to find in the previously discussed provisions of *W.Va. Code,* 29–12A–4 [1986] and –5 [1986].

However, we have concluded that there is no such "sewer immunity" in *W.Va.Code,* 29–12A–4 [1986] and –5 [1986]. The City therefore cannot rely upon the argument that its "sewer immunity" ordinance is consistent with the general law of the state. To the contrary, based on our holdings in this opinion, the City's ordinance is in conflict with the general law of the state.

In further support of the City's claim to have the authority to enact a "sewer immunity" ordinance, the City relies on *W.Va.Code,* 8–20–10 [1990], that authorize a municipality to "enact ... rules and regulations for the ... operation and management of [a] ... sewage system ... and ordinances for the care and protection of such system." *Id.*

The City contends that this authority to build and operate a sewer system includes a grant of power to modify the principles of tort liability that are established by the state's general law, as those principles relate to the sewer system. The City cites us to no authority for this proposition, and we decline to adopt it.

 Based on the foregoing discussion, we conclude that a municipal ordinance that

is enacted pursuant to the power granted to municipalities in *W.Va.Code,* 8–20–10 [1990], to construct, operate, maintain, care for, and protect a sewer system, and that purports to limit, modify, or eliminate tort liabilities and immunities related to that sewer system in a fashion that conflicts with the general law of the state, is unenforceable and void, to the extent of such conflict.

### IV.

#### *Conclusion*

Based on the foregoing reasoning, we conclude that the answers given by the circuit court to the certified questions were correct.[11] We remand the instant case for further proceedings consistent with the principles announced herein.

Certified Questions Answered.

---

11. Although we have discussed one issue in this opinion that was not raised by the circuit court—"negligent act" liability under *W.Va.Code,* 29– 12A–4(c)(2) [1986]—our discussion and our holdings are consistent with the circuit court's answers to the certified questions.