691 S.E.2d 531

**Brandy PINGLEY, et al., Petitioners Below, Appellants,**

v.

**HUTTONSVILLE PUBLIC SERVICE DISTRICT, Respondent Below, Appellee.**

**No. 34969.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 10, 2010.

Decided March 4, 2010.

Erika H. Klie Kolenich, Klie Law Offices, Buckhannon, WV, for Appellants.

Roberta F. Green, Heather B. Lord Osborn, Shuman, McCuskey & Slicer, Charleston, WV, for Appellee.

PER CURIAM:

Brandy and Jonathan Pingley, plaintiffs below (hereinafter "the Pingleys"), appeal from an order of the Circuit Court of Randolph County granting summary judgment in favor of Huttonsville Public Service District, defendant below (hereinafter "HPSD").[1] In this appeal, the Pingleys contend that it was error to grant HPSD summary judgment prior to discovery being conducted in the case. After a careful review of the briefs, the record submitted on appeal, and listening to the oral arguments, we reverse and remand this case for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The record indicates that in January or February of 2007, the Pingleys moved into their home in the East Dailey area of Randolph County, West Virginia. The Pingleys allege that at approximately 2:00 a.m. on April 14, 2007, they awoke and found that their home was flooded with a substantial amount of sewage.[2] The Pingleys contacted HPSD to complain that the sewage backup in their home was caused by problems with HPSD's sewer system. As a result of the damage done to their home by the sewage backup, the Pingleys were forced to move out of their home for three and a half months.

HPSD, through its insurer, allegedly spent over $60,000.00 repairing the Pingleys' home and sewer line, and providing for the Pingleys during the repair period. The Pingleys believed that they were not adequately compensated for the damage caused by the sewage backup. Consequently, on June 9, 2008, the Pingleys filed the instant action against

---

1. The Pingleys' complaint also listed their four children as plaintiffs.

2. Earlier on that day, there was a heavy rainfall.

HPSD.[3] Prior to filing an answer to the complaint, HPSD filed a motion for summary judgment on July 11, 2008. Thereafter, the Pingleys filed a response to HPSD's summary judgment motion. The response included an affidavit under Rule 56(f) of the West Virginia Rules of Civil Procedure.[4] The Pingleys' Rule 56(f) affidavit indicated that they needed to engage in discovery to defeat HPSD's motion for summary judgment. The circuit court, by order entered December 11, 2008, granted HPSD's motion for summary judgment. From this order, the Pingleys now appeal.[5]

## II.

### STANDARD OF REVIEW

This matter comes before this Court from an order of the circuit court granting a motion for summary judgment in favor of HPSD. We have held that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). In Syllabus point 3 of *Aetna Casualty and Surety Company v. Federal Insurance Company of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963), we held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *See* Syl. pt. 1, *Jefferson County Citizens for Econ. Pres. v. County Comm'n of Jefferson County,* 224 W.Va. 365, 686 S.E.2d 16 (2009). Additionally, we have held that "[s]ummary judgment is mandated in our courts where, *after appropriate discovery,* there is no legitimate dispute regarding a genuine issue of material fact impacting liability apparent from the record before the circuit court." *Jackson v. Putnam County*

*Bd. of Educ.,* 221 W.Va. 170, 177–78, 653 S.E.2d 632, 639–40 (2007) (emphasis added). With these standards in place, we turn to the merits of this appeal.

## III.

### DISCUSSION

The sole issue raised by the Pingleys is that the circuit court erred by granting summary judgment in favor of HPSD because, as set forth in their Rule 56(f) affidavit, there was a need for discovery to resist the summary judgment motion.[6] In Syllabus point 3 of *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 459 S.E.2d 329 (1995), we addressed the burden on a party opposing a motion for summary judgment:

If the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the non-moving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) *submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.*

(Emphasis added). *See* Syl. pt. 3, in part, *Crain v. Lightner,* 178 W.Va. 765, 364 S.E.2d 778 (1987) ("Where a party is unable to resist a motion for summary judgment because of an inadequate opportunity to conduct discovery, that party should file an affidavit pursuant to W. Va. R. Civ. P. 56(f) and obtain a ruling thereon by the trial court."). It has been recognized that "[s]ummary judgment is appropriate only after the opposing party has had adequate time for discovery."

---

3. The Pingleys sought damages for loss of property, loss of use of property, diminution of the value of their home, emotional distress, and other claims.

4. Rule 56(f) is discussed further in Section III, *infra.*

5. The Pingleys filed post-summary judgment motions, which were denied.

6. Rule 56(f) of the West Virginia Rules of Civil Procedure provides that,
   Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Franklin D. Cleckley, Robin J. Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 56(f), at 1144 (3d ed. 2008). *See Powderidge Unit Owners Ass'n v. Highland Props., Ltd.*, 196 W.Va. 692, 701, 474 S.E.2d 872, 881 (1996) ("As a general rule, summary judgment is appropriate only after adequate time for discovery."). We have also noted that "a decision for summary judgment before discovery has been completed must be viewed as precipitous." *Board of Educ. of the County of Ohio v. Van Buren & Firestone Architects, Inc.*, 165 W.Va. 140, 144, 267 S.E.2d 440, 443 (1980).

■ The record in this case is clear. The Pingleys did not engage in discovery after the complaint was filed because HPSD filed its summary judgment motion prior to filing an answer to the complaint.[7] As a consequence of the summary judgment motion, no scheduling or discovery conference was held. Although formal discovery was never conducted by the Pingleys, the circuit court rejected the Pingleys' request to conduct discovery prior to ruling on the summary judgment motion.[8] The circuit court determined that the Pingleys could not prove that HPSD breached a duty owed to them. The circuit court's summary judgment order stated that HPSD established that it never received any complaints regarding the Pingleys' sewer line prior to the flooding. Therefore, it breached no duty of care to the Pingleys. *See* Cleckley, et al., *Litigation Handbook*, § 56(c), at 1135 ("In order to establish a prima facie case of negligence,

it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken.").

The circuit court found that HPSD had to have prior knowledge that the Pingleys had a sewer line problem before its duty of care to them arose. In so finding, the circuit court relied exclusively upon this Court's decision in *Calabrese v. City of Charleston*, 204 W.Va. 650, 515 S.E.2d 814 (1999), stating in its summary judgment order that:

> [a]s to a public utilit[y's] duty, the [Supreme Court] held in *Calabrese* ... "a municipality, in maintenance of its sewerage system, owes only the duty of reasonable care to avoid damage to the property of others." The [Supreme Court] also notes in *Calabrese* that without notice of a specific issue or concern with the property or service lines, a public utility has no duty to act beyond ensuring the line is open, in repair, and free from nuisance.

The circuit court's interpretation of *Calabrese* is simply wrong.

In *Calabrese*, the plaintiffs' home was damaged when their basement was flooded with sewage on at least five occasions. The plaintiffs sued the City of Charleston on the grounds that it was negligent in the maintenance and operation of the City's sewer system. The City moved for summary judgment on the grounds that it was immune from liability based upon statutes and its own

---

7. We note that "[a] defendant is not required to file an answer to the complaint before moving for summary judgment." Cleckley, Davis & Palmer, *Litigation Handbook*, § 56(b), at 1119 n. 281. *See State ex rel. Pritt v. Vickers*, 214 W.Va. 221, 225, 588 S.E.2d 210, 214 (2003) ("Federal '[c]ourts and commentators have acknowledged that no answer need be filed before a defendant's motion for summary judgment may be entertained.' *INVST Fin. Group, Inc. v. Chem–Nuclear Sys., Inc.*, 815 F.2d 391, 404 (6th Cir.1987).").

8. During oral arguments, counsel for the Pingleys suggested that discovery could not occur because no answer was filed. As a general matter, our rules of civil procedure permitted the Pingleys to engage in discovery even though an answer had not been filed. *See* Cleckley, et al., *Litigation Handbook*, § 30(a), at 733 ("An oral deposition under Rule 30(a) may not occur until

after an action has been properly filed. Rule 30(a) requires a plaintiff obtain leave of court, if the plaintiff seeks to take a deposition prior to the expiration of 30 days after service of process upon any defendant[.]"); *id.*, § 33(a), at 804 ("[Rule 33(a)] provides that interrogatories may be served upon any defendant, without leave of court, with or after service of the summons and complaint upon that party."); *id.*, § 34(b), at 833 ("A plaintiff may, without leave of court, serve a Rule 34(a) discovery request upon any defendant together with service of the summons and complaint or after service of process."). However, we equally understand that, because of the limited time between the filing of the summary judgment motion and when that motion was heard by the trial court, meaningful discovery was probably not practical.

ordinance. Prior to ruling on the City's motion for summary judgment, the circuit court certified four questions to this Court. The questions certified and the circuit court's answers were as follows:

1. When the plaintiffs' claim against the City of Charleston arises from an alleged clogged, blocked or negligently designed/maintained City sewer line and/or storm drain, does the plaintiffs' claim fall within § 29–12A–4(c)(3) of the Governmental Tort Claims and Insurance Reform Act (hereinafter "the Act"), stating "political subdivisions are liable for injury ... or loss to persons or property that is caused by their negligent failure to keep public ... aqueducts, ... within the political subdivision open, in repair or free from nuisance ..." thereby constituting an exception to the immunity generally provided to political subdivisions in § 29–12A–4(b)(1) of the Act?

Ruling by the Circuit Court: Yes <u>X</u> No ___

2. If the plaintiffs' claim against the City of Charleston in this case falls within § 29–12A–4(c)(3), does the claim, in turn, fall within the specific exception to liability set forth in § 29–12A–5(a)(16) providing that "a political subdivision is immune from liability if a loss or claim results from [t]he operation of dumps, sanitary landfills, and facilities where conducted directly by a political subdivision?"

Ruling by the Circuit Court: Yes ___ No <u>X</u>

3. If the plaintiffs' claim against the City of Charleston in this case falls with § 29–12A–4(c)(3), does the claim, in turn, fall within the exception to liability set forth in § 29–12A–5(a)(10) providing that "a political subdivision is immune from liability if a loss or claim results from [i]nspection powers or functions, including failure to make an adequate inspection, or making an inadequate inspection, of any property, real or personal, to determine whether the property complies with or violates any law or contains a hazard to health or safety"?

Ruling by the Circuit Court: Yes ___ No <u>X</u>

4. Is § 25–17 of the Charleston City Code, providing that "neither the City nor the Sanitary Board shall be liable for any damage resulting from bursting of any sewer main, service pipe or valve ... or from the accidental failure of the sewage collection, treatment and disposal facilities from any cause whatsoever ..." a valid and enforceable exercise of municipal power and authority pursuant to W. Va.Code § 8–20–10, thereby insulating the City from suit in this case?

Ruling by the Circuit Court: Yes ___ No <u>X</u>

*Calabrese,* 204 W.Va. at 654–55, 515 S.E.2d at 818–19. This Court in *Calabrese* agreed with and adopted the circuit court's answer to each of the certified questions.

The first point we wish to make regarding *Calabrese* is that none of the four certified questions asked this Court to decide whether an operator of a sewer system must have prior knowledge of a sewer problem *before* a duty arises to its customers. Although the circuit court attributes its conclusion to the *Calabrese* opinion, there is simply no language in that opinion either expressly or implicitly addressing this issue.

■ The next point to be made regarding *Calabrese* is that the opinion expressly held that "[t]he liability for political subdivisions created in W. Va.Code, 29–12A–4(c)(3) [1986] includes liability for injury, death, or loss to persons or property caused by a subdivision's negligent failure to keep its sewers and drains open, in repair, or free from nuisance." Syl. pt. 4, *Calabrese,* 204 W.Va. 650, 515 S.E.2d 814. In making this holding, *Calabrese* noted that "[a]t common law, this Court's decisions going back over 100 years have recognized the liability of political subdivisions in West Virginia for injuries arising out of the negligent maintenance and operation of drains and sewers." *Calabrese,* 204 W.Va. at 658, 515 S.E.2d at 822.

■ The determination in *Calabrese* that a political subdivision can be held liable for harm caused by its negligent failure to keep its sewers open and in repair is applicable to HPSD. This Court has recognized that "[l]ike a municipality, a public service district is a

public corporation and political subdivision of this State." *McCloud v. Salt Rock Water Pub. Serv. Dist.,* 207 W.Va. 453, 458, 533 S.E.2d 679, 684 (2000). *See* W. Va.Code § 16–13A–3 (2002) (Repl. Vol. 2006) ("From and after the date of the adoption of the order creating any public service district, it is a public corporation and political subdivision of the state, but without any power to levy or collect ad valorem taxes."). Insofar as HPSD is a public service district, it is a political subdivision of the State and is subject to liability for damage caused by its negligent failure to keep its sewers and drains open and in repair. This duty is not limited to having prior knowledge of a sewer line problem.

In the instant proceeding, the Pingleys' complaint alleged that HPSD owed them a duty "to ensure that the water lines, sewer lines and/or sewer system was at all times adequately maintained, inspected, in good repair, and compliant with all applicable codes, as would a reasonably prudent public service entity." The complaint further asserted that HPSD breached its duty "by failing to properly maintain said sewer lines and system, failure to properly inspect said line and system, failure to adequately repair said line and system and failure to keep the same in compliance with the code." These allegations in the Pingleys' complaint were never addressed by the circuit court. The circuit court focused upon the sole issue of whether there was prior knowledge of a problem with the Pingleys' sewer line. The circuit court's narrow focus has no legal support.

Other than referencing the decision in *Calabrese,* HPSD's brief does not rely upon any legal authority to support the proposition that, without prior knowledge of a problem, it owed no duty to the Pingleys regarding the sewage backup that damaged their home. Were we to follow the logic of HPSD, no sewer operator could be held liable for damage caused by, for example, the failure to perform general maintenance inspections or performing negligent inspections, which re-

sult in harm to a property owner. *See Calabrese,* 204 W.Va. at 659, 515 S.E.2d at 823 ("If we were to [adopt the position] the City suggests, a political subdivision would be immunized from liability arising out of any injurious conditions on any of its property—regardless of the subdivision's negligence in creating or tolerating those conditions—if the subdivision had at some previous time failed to properly inspect its own property, or to properly follow up on an inspection and correct a problem on the subdivision's own property."). We have found no statute or decision of this Court that would insulate HPSD from liability for harm caused by its failure to perform general maintenance inspections or negligently performing inspections. To the contrary, "it is the duty of [HPSD] from the time it acquires or constructs a sewer to maintain it in a reasonably safe condition." *McCabe v. City of Parkersburg,* 138 W.Va. 830, 835, 79 S.E.2d 87, 91 (1953). Consequently, it was error for the circuit court to conclude that HPSD was immunized from liability merely because it allegedly had no prior knowledge of a problem with the Pingleys' sewer line.

■■■■■ The Pingleys' complaint asserted that they sustained damages because HPSD failed to properly maintain, inspect, and repair its sewer system. Insofar as HPSD's summary judgment motion did not address the negligent allegations in the Pingleys' complaint, the Pingleys had the right to conduct discovery on such matters prior to the circuit court's summary judgment determination. As we indicated in *Williams,* "a continuance of a summary judgment motion is mandatory upon a good faith showing by an affidavit that the continuance is needed to obtain facts essential to justify opposition to the motion." *Williams,* 194 W.Va. at 61–62, 459 S.E.2d at 338–39. Consequently, it was error for the trial court to rule on HPSD's summary judgment motion prior to allowing the Pingleys to conduct discovery.[9]

---

9. Even if the circuit court later determines that HPSD had no prior knowledge of a sewer line problem affecting the Pingleys, as alleged by HPSD, that finding alone will not permit dismissal of the action. There must be a determination

as to whether HPSD failed to maintain, inspect, or repair its sewer system and, if so, whether such failure was the proximate cause of the Pingleys' injuries.

## IV.

### CONCLUSION

The circuit court's summary judgment order of December 11, 2008, is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.