723 S.E.2d 842

Steven M. POSEY and Michelle E. Posey, Plaintiffs Below, Petitioners

v.

CITY OF BUCKHANNON, West Virginia, a West Virginia statutory municipal corporation, Defendant Below, Respondent.

No. 11–0565.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 18, 2012.

Decided Jan. 27, 2012.

Bader C. Giggenbach, Esq., Brewer & Giggenbach, Morgantown, WV, for Steven M. Posey and Michelle E. Posey.

Tamara J. DeFazio, Esq., Kristen D. Antolini, Esq., Shuman, McCuskey & Slicer, Morgantown, WV, for The City of Buckhannon.

KETCHUM, C.J.:

This action is before this Court upon the appeal of petitioners Steven M. Posey and Michelle E. Posey from the order of the Circuit Court of Upshur County, West Virginia, dismissing their complaint, with preju-

dice, against the respondent, the City of Buckhannon. The complaint alleged negligence against the City resulting in injuries to Steven M. Posey when he fell at the City's solid waste transfer station. The circuit court dismissed the complaint pursuant to the immunity provisions of the *West Virginia Governmental Tort Claims and Insurance Reform Act.* *W.Va.Code,* 29–12A–1 [1986], *et seq.*

The Poseys contend that transfer stations, such as the one conducted by the City of Buckhannon, are not included in the governmental immunity provisions of the Act. Upon careful review, however, and for the reasons set forth herein, this Court finds that contention to be without merit. Accordingly, the order of the circuit court dismissing the complaint is affirmed.

## I.

### Factual and Procedural Background

The City of Buckhannon owned and operated a Solid Waste Disposal Complex in Upshur County. Although the Complex did not include a refuse dump or sanitary landfill, the City maintained a transfer station at the Complex for the collection of trash and other waste material.[1] Trash and other waste material received at the transfer station were subsequently transported to an out-of-county dump.

On January 4, 2008, Steven M. Posey was unloading garbage bags and other material at the transfer station when he fell from the tailgate of his pickup truck and slid 18 feet

down an open pit. His injuries included various fractures, a head laceration and a compression of the spine. His medical expenses exceeded $112,000.

In November 2009, the Poseys filed an action in the Circuit Court of Upshur County against the City of Buckhannon. They alleged, *inter alia,* that the City was negligent in failing to provide assistance to individuals depositing refuse at the transfer station and in failing to erect protective barriers along the exposed sides of the open pit.

Thereafter, the City filed a motion to dismiss alleging that the City is entitled to immunity from liability pursuant to the *West Virginia Governmental Tort Claims and Insurance Reform Act.* *W.Va.Code,* 29–12A–1 [1986], *et seq.* As the Act states, its purposes "are to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability." *W.Va.Code,* 29–12A–1 [1986].[2] The motion to dismiss relied specifically on *W.Va.Code,* 29–12A–5(a)(16) [1986], which provides: "A political subdivision is immune from liability if a loss or claim results from: ... (16) The operation of dumps, sanitary landfills, and facilities where conducted directly by a political subdivision[.]"[3]

Following a hearing, the circuit court on November 30, 2010, granted the City of Buckhannon's motion and dismissed the complaint with prejudice.

Citing *Brooks v. City of Weirton,* 202 W.Va. 246, 256, 503 S.E.2d 814, 824 (1998),

---

**1.** A current definition of the phrase *transfer station* is found in the *West Virginia Code of State Rules.* As CSR § 33–1–2.133 [2010] (promulgated under the authority of the *West Virginia Solid Waste Management Act,* W.Va.Code, 22–15–1 [1998], *et seq.*) states in part, *transfer station* "means a structure, or combination of structures, machinery or devices at a place, location or facility where solid waste is taken from collection vehicles and placed in other transportation units for movement to another solid waste management facility[.]" *See,* CSR § 54–3–2.15 [2001], and *CSR* § 54–4–2.31 [2001], (providing similar definitions).

**2.** With regard to insurance, it is worth noting the following provision of the Act found in *W.Va. Code,* 29–12A–16(d) [2003]:

> The purchase of liability insurance, or the establishment and maintenance of a self-insurance program, by a political subdivision does not constitute a waiver of any immunity it may have pursuant to this article or any defense of the political subdivision or its employees.

**3.** According to the *West Virginia Solid Waste Management Act, landfill* is defined as "any solid waste facility for the disposal of solid waste on or in the land for the purpose of permanent disposal." *W.Va.Code,* 22–15–2(17) [2005]. Similar definitions of the term *landfill* are found in the West Virginia Code of State Rules: *see,* CSR § 33–1–2.64 [2010]; *CSR* § 54–3–2.4 [2001]; *CSR* § 54–4–2.18 [2001]; and *CSR* § 54–5–2.11 [2002].

for the proposition that the West Virginia Legislature would not have included superfluous provisions concerning immunity in the *Governmental Tort Claims and Insurance Reform Act,* the circuit court concluded that the phrase *and facilities* in *W.Va.Code,* 29–12A–5(a)(16) [1986], was meant "to include a landfill-related and/or dump-related facility such as the transfer station at issue in this action." Consequently, the circuit court held that the Poseys' complaint fell squarely within the purview of a political subdivision's immunity from liability as set forth in the Act.

The Poseys appeal to this Court from the November 30, 2010, dismissal order.

## II.

### Standard of Review

Pursuant to Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure,* the filing of a motion to dismiss is authorized where the complaint fails to state a claim upon which relief can be granted. The granting of the motion is subject to *de novo* review by this Court. Syllabus point 2 of *State ex rel. McGraw v. Scott Runyan Pontiac–Buick,* 194 W.Va. 770, 461 S.E.2d 516 (1995), holds: "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syl. pt. 1, *Lontz v. Tharp,* 220 W.Va. 282, 647 S.E.2d 718 (2007). The *de novo* standard is especially relevant in the present matter since the material facts concerning the question of the City's immunity in relation to Posey's injury are not in dispute. Thus, this Court held in syllabus point 1 of *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995): "Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 4, *Harrison County Commission v. Harrison County Assessor,* 222 W.Va. 25, 658 S.E.2d 555 (2008).

## III.

### Discussion

The question to be determined is whether a transfer station conducted directly by a political subdivision such as the City of Buckhannon, as a temporary collection site for solid waste to be transported to a dump or sanitary landfill, constitutes a "facility" within the meaning of the immunity provisions provided by *W.Va.Code,* 29–12A–5(a)(16) [1986]. The Poseys contend that since transfer stations only receive solid waste on a temporary basis, they are distinguishable from dumps and sanitary landfills where solid waste is permanently stored. Therefore, transfer stations are not facilities within the meaning of *W.Va.Code,* 29–12A–5(a)(16) [1986]. On the other hand, the Poseys assert that transfer stations constitute facilities under that statutory section if they are located "on and operated in connection with" a dump or sanitary landfill, i.e., if the City of Buckhannon's transfer station had been physically located on and operated in connection with a dump or landfill, the City would have had immunity from liability in this action. The Poseys derive their assertion from *Calabrese v. City of Charleston,* 204 W.Va. 650, 515 S.E.2d 814 (1999).

In *Calabrese,* this Court answered certified questions from the Circuit Court of Kanawha County concerning the *West Virginia Solid Waste Management Act* and upheld the court's rulings that the City of Charleston was not entitled to immunity in the underlying action. The plaintiffs in *Calabrese* alleged that their basement was repeatedly flooded because of the City of Charleston's negligent operation and maintenance of its sewer system. Recognizing the principle that, in actions concerning governmental tort legislation, liability is favored rather than immunity, this Court held that the City of Charleston was entitled to immunity under *W.Va.Code,* 29–12A–5(a)(16) [1986], only to the extent that its sewers were located on, and a part of the operation of, a dump or landfill. The limited immunity thus described with regard to the City's sewer system did not, under the facts in *Calabrese,* preclude the plaintiffs' action.

The passage, in *Calabrese,* in which the language relied on by the Poseys is found, sets forth the following conclusion:

[W]e view the immunity that is created by *W.Va.Code,* 29–12A–5(a)(16) [1986] as relating to sanitary landfills and dumps that are operated by political subdivisions—and associated facilities that are located on and operated in connection with the dump or sanitary landfill.

Therefore, we hold that *W.Va.Code,* 29–12A–5(a)(16) [1986] does not immunize a political subdivision from liability arising out of negligently-caused dangerous, injurious, or harmful conditions in or arising out of the subdivision's sewer system, except insofar as the sewers are located on and a part of the operation of a dump or sanitary landfill by the subdivision.

204 W.Va. at 660, 515 S.E.2d at 824.

It can be seen, accordingly, that the language in *Calabrese* relied on by the Poseys is modified by the same principle expressed with greater specificity in the second paragraph. The second paragraph, setting forth the holding in the opinion, speaks only to sewer systems. Nothing in *Calabrese* addresses immunity in the context of transfer stations.[4] In that regard, the following comment by the circuit court in the current matter is persuasive: "It is both impractical and illogical to read *Calabrese* as applied to the facts underlying plaintiffs' claim in this action, to unnecessarily restrict the immunity conferred by West Virginia Code Section 29–12A–5(a)(16) to facilities located *on* the site of a dump or landfill[.]" (emphasis in original).

Moreover, attached to the Poseys' response to the motion to dismiss was a copy of the City's Solid Waste Transfer Station Permit stating that the permit for the transfer station was issued, in part, pursuant to West Virginia Code, chapter 22, article 15, the *West Virginia Solid Waste Management Act.* The Act, in *W.Va.Code,* 22–15–2(34) [2005], associates facilities, landfills and transfer stations together within the definition of *solid waste facility.* That section provides in part:

"Solid waste facility" means any system, *facility,* land, contiguous land, improvements on the land, structures or other appurtenances or methods used for *processing,* recycling *or disposing* of sold waste, including *landfills, transfer stations,* materials recovery facilities, mixed waste processing facilities, sewage sludge processing facilities, commercial composting facilities and other such facilities not herein specified[.] (emphasis added)

Manifestly, in addition to associating facilities, landfills and transfer stations together, the above provision also contemplates both the processing and disposing of solid waste within the definition, thereby depriving of significance the distinction between the temporary and permanent storing of solid waste for purposes of immunity considerations.

Syllabus point 1 of *Hutchison v. City of Huntington,* 198 W.Va. 139, 479 S.E.2d 649 (1996), makes clear:

The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition.

Syl. pt. 2, *Messer v. Huntington Anesthesia Group,* 218 W.Va. 4, 620 S.E.2d 144 (2005).

In this action, the issue of the City's immunity under the *West Virginia Governmental Tort Claims and Insurance Reform Act* from liability to the Poseys is purely a question of law and was ripe for summary disposition at the circuit court level through the motion to dismiss. This Court concludes that the circuit court properly determined that the phrase *and facilities* in *W.Va.Code,* 29–12A–5(a)(16) [1986], was meant by the Legislature to include a landfill-related and/or a dump-related facility such as the transfer station conducted by the City of Buckhannon. Thus, we find persuasive the City's response filed in this Court which states:

Section 29–12A–5(a)(16) clearly immunizes a city from liability for a claim or loss

---

4. The second paragraph setting forth the holding in *Calabrese* was extensively used as syllabus point 6 of the opinion. Syllabus points, representing "points adjudicated" by this Court, have special significance because they are required under Article VIII, § 4, of The Constitution of West Virginia.

which results from the City's operation of a facility, such as a transfer station, which is logically associated with a dump or sanitary landfill. * * * In this case, the waste material deposited in the transfer station must necessarily be taken to a dump or landfill. There is no dispute on this point. It is therefore clear that the transfer station is a landfill-related and dump-related facility that should be immunized.

This Court, therefore, holds that a transfer station conducted directly by a political subdivision, as a temporary collection site for solid waste to be transported to a dump or sanitary landfill, constitutes a "facility" within the meaning of the immunity provisions provided by *W.Va.Code,* 29–12A–5(a)(16) [1986], of the *West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va.Code,* 29–12A–1 [1986], *et seq.,* and to the extent this Court's opinion in *Calabrese v. City of Charleston,* 204 W.Va. 650, 515 S.E.2d 814 (1999), would exclude a transfer station as a "facility" under those statutory provisions, the opinion in *Calabrese* is modified.

In so holding, this Court acknowledges that the terms "dump," "sanitary landfill," "transfer station" and "facility" are subject to various other meanings and distinguishing characteristics with regard to permit, operating, environmental impact and other requirements found in the statutes, rules and regulations of this State. Quite naturally, therefore, our holding in this matter is limited to the specific provisions of *W.Va.Code,* 29–12A–5(a)(16) [1986], of the *West Virginia Governmental Tort Claims and Insurance Reform Act.*

### IV.
### Conclusion

Upon all of the above, the November 30, 2010, order of the Circuit Court of Upshur County dismissing the complaint, with prejudice, pursuant to the immunity provisions of *W.Va.Code,* 29–12A–5(a)(16) [1986], is affirmed.

Affirmed.