# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Tilhance Creek Investments, LLC, and
Court House Square Investments, LLC,
Plaintiffs Below, Petitioners

**FILED**

March 29, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs)  No. 12-0290 (Berkeley County 11-C-688)

BCBank, Inc. and Donald Epperly, as
Trustee for BCBank, Inc.
Defendants Below, Respondents

## MEMORANDUM DECISION

Petitioners Tilhance Creek Investments, LLC ("Tilhance") and Court House Square Investments, LLC ("Court House") by counsel Michael J. Novotny, appeal the Circuit Court of Berkeley County's "Order Granting Defendant's Motion to Dismiss" entered on January 18, 2012. Respondents BCBank, Inc., and Donald Epperly, as Trustee for BCBank, Inc., by counsel Charles S. Trump IV, have filed their response. Petitioners have filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

This case arises out of the 2007 purchase of certain parcels of property by petitioners, which were secured by promissory notes by Petitioner BCBank. By December of 2008, both Tilhance and Court House were in default on their respective loans. Instead of seeking foreclosure BCBank agreed to a loan modification wherein the Tilhance loan was secured by the Court House property, and the Court House loan was secured by the Tilhance property through cross-collateralization. Petitioners again defaulted on both loans, and foreclosure began on the Tilhance property on September 10, 2010. After the foreclosure, a sale occurred wherein BCBank was the only bidder and purchased the property for $800,000. Respondent Epperly was the trustee who conducted the sale. The trustee's notice of sale indicated that this sale was being conducted under the second Tilhance note, which was the cross-collateralization loan. From the $800,000, sale expenses in the amount of $5,568.37 were disbursed, with the remaining $794,431.63 applied to the Tilhance note. Foreclosure upon the Court House property occurred on December 29, 2010, and BCBank was the only bidder, purchasing the property for $3,940,000. The notice of sale for the Court House property indicated that the sale was conducted under both the first Court House note and the second Court House note. The proceeds

1

of the sale were applied as follows: $3,115,481.66 to the first Court House note and $798,161.20 to the second Court House note.

Petitioners filed their complaint on August 25, 2011, setting forth five causes of action as follow: fraud, conversion, breach of fiduciary duty, breach of contract, and merger of title. Petitioners argued that the proceeds of the first sale should have been disbursed as follows: $5,568.37 to expenses, and $794,431.63 to the Court House note, leaving a balance of $2,321,050.03 on the Court House note. Petitioners then state that after the second sale, proceeds after costs were removed were $3,913,642.86. When this amount is applied to the remaining balance of the Court House note, there is a surplus of $1,592,592.83. Respondents moved to dismiss the action pursuant to Rule 12(b)(6), to which petitioners responded. On January 18, 2012, the circuit court entered the order granting respondents' motion to dismiss.

On appeal, petitioners argue several assignments of error, all of which involve how the proceeds of the sale were distributed. Petitioners first argue that the Tilhance loan was extinguished when BCBank purchased the Tilhance property at the foreclosure auction conducted solely under the second Tilhance loan. Along the same line, petitioners also argue that the doctrine of merger extinguished the first Tilhance loan. Further, petitioners argue that the circuit court erred in finding that petitioners did not assert valid claims for conversion, breach of contract, and breach of fiduciary duty. Finally, petitioners argue that the circuit court erred in dismissing their claim for fraud due to a lack of particularity and by ruling that equitable factors weigh in favor of the dismissal of petitioners' complaint.

Respondents respond in favor of the circuit court's dismissal, arguing first that the Tilhance debt was not extinguished by the first foreclosure, and that the doctrine of merger is inapplicable to this case. Respondents also argue that the claim of conversion is without merit, and that the specific language of the deeds of trust preclude the conversion claim. Respondents contend that the breach of fiduciary duty and breach of contract claims are likewise without merit, and that the fraud claim was not pled with particularity. Finally, respondents argue that equitable factors weighed in favor of dismissal of the complaint, as petitioners defaulted on more than $4.4 million in loans to respondents.

This Court has previously held that "'[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.' Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick*, 194 W.Va. 770, 461 S.E.2d 516 (1995)." Syl. Pt. 1, *Posey v. City of Buckhannon*, 228 W.Va. 612, 723 S.E.2d 842 (2012). Our review of the record reflects no clear error or abuse of discretion by the circuit court. Having reviewed the circuit court's "Order Granting Defendant's Motion to Dismiss" entered on January 18, 2012, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  March 29, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis
Justice Margaret L. Workman

IN THE CIRCUIT COURT OF BERKELEY COUNTY, WEST VIRGINIA
Division II

TILHANCE CREEK INVESTMENTS, LLC, and
COURT HOUSE SQUARE INVESTMENTS, LLC,

Plaintiff,

v.

BCBANK, INC., and
DONALD J. EPPERLY, AS TRUSTEE
for BCBANK, INC.,

Defendants.



FILED
MAY 2 1 2012
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CIVIL ACTION NO. 11-C-688
JUDGE WILKES

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter came before the Court this ___18___ day of January 2012, pursuant to Defendant's Motion to Dismiss. Upon the written appearance of Plaintiffs, Tilhance Creek Investments, LLC and Court House Square Investments, LLC, by counsel, Michael J. Novotny, and Defendants, BCBank, Inc. and Donald J. Epperly as Trustee, by counsel Charles S. Trump IV, and upon the record and pertinent legal authorities the Court rules as follows.

### FINDINGS OF FACT

1. On August 25, 2011, Plaintiffs filed a complaint in this matter. The Complaint sets forth five causes of action which arise out of the Trustee sale and distribution of proceeds for two properties pursuant to Deeds of Trust made between Plaintiffs and Defendant BCBank: "Count I Fraud," "Count II Conversion," "Count III Breach of Fiduciary Duty," "Count IV Breach of Contract," and "Count V Merger of Title."

2. The Complaint alleges that on or about January 25, 2007, Plaintiff Tilhance Creek Investments, LLC (hereinafter "Tilhance") purchased a certain parcel of real estate in Hedgesville, WV (Berkeley County) (hereinafter "T.C. Property"). At the same time, Tilhance entered into a loan transaction with BCBank, Inc. (hereinafter "BCBank"). The loan transaction included a Promissory Note, as well as a Deed of Trust (hereinafter "Tilhance First Deed of Trust"), as a security instrument, which secured Tilhance's debt to BCBank with the T.C. Property. The loan was for $1,517,500.00.

3. The Complaint alleges that on or about May 25, 2007, Court House Square Investments, LLC, (hereinafter "Court House"), entered into a loan transaction with BCBank. The loan transaction included a Promissory Note, as well as a Deed of Trust (hereinafter "Court House First Deed of Trust"), as a security instrument, which secured Court House's debt to BCBank with certain real estate in Martinsburg, West Virginia (Berkeley County) (hereinafter C.H. Property). The loan was for $2,917,833.00.

4. In December of 2008, both Tilhance and Court House were in default in the payment of their loan obligations. Instead of seeking foreclosure at that time, BCBank agreed to a modification to both the loan agreements connected to the T.C. Property and the C.H. Property: a cross-collateralization.

5. The Complaint alleges that on December 31, 2008, Court House agreed with BCBank to convey C.H. Property as additional security for the loan provided to Tilhance, which was already secured by the T.C. Property. Thus, Court House executed a second Deed of Trust for the C.H. Property (hereinafter "Court House Second Deed of Trust"), to secure any debts outstanding from the loan made to Tilhance. Likewise, on the same date, Tilhance agreed with BCBank to convey T.C. Property as additional security for the loan

002

provided to Court House, which was already secured by the C.H. Property. Thus, Tilhance executed a Second Deed of Trust for the T.C. Property (hereinafter "Tilhance Second Deed of Trust") to secure any debts outstanding from the loan made to Court House.

6. Both Plaintiffs again defaulted in the payment of their loan obligations.

7. Foreclosure upon the T.C. Property occurred on September 10, 2010. Notices were sent out by the Trustee. The sale was advertised. At the sale, BCBank was the only bidder, bidding $800,000.00 for the T.C. Property. The Trustee's Deed to BCBank was recorded on January 6, 2011.

8. The Trustee's Notice of Sale for the T.C. Property foreclosure provided that the sale was being conducted under the Tilhance Second Deed of Trust (securing the Court House Square Note). The Trustee's Report of Sale from the Tilhance Creek Foreclosure shows that the net sale proceeds ($794,431.63) were disbursed to BCBank "on account of its first priority deed of trust indebtedness." Plaintiffs contend that this was an application of the proceeds to the loan secured by the Tilhance Second Deed of Trust (Court House's Debt) for which the sale was noticed.

9. Foreclosure upon the C.H. Property occurred on December 29, 2010.[1] Notices were sent out by the Trustee. The sale was advertised, and at the sale BCBank was the only bidder, bidding $3,940,000.00 for the Court House Square Estate.

10. The Trustee's Notice of Sale for the C.H. Property foreclosure provided that the sale was being conducted under both the Court House First Deed of Trust and the Court House

---

[1] A foreclosure sale was conducted but not completed on September 10, 2010. *See* Berkeley County Case 10-C-1048; Amended Order Granting Defendant's Motion to Dismiss.

Second Deed of Trust. The Trustee's Report of Sale from the C.H. Property Foreclosure shows that the net sale proceeds were applied to the loans as follows:

a. $3,115,481.66 was disbursed to BCBank "on account of its first priority deed of trust indebtedness"

    i. Plaintiffs contend this was an application of proceeds to the debt secured by the Court House First Deed of Trust (the Court House's debt to BCBank); and

b. $798,161.20 was disbursed to BCBank "on account of its second priority deed of trust indebtedness."

    i. Plaintiffs contend this was an application of proceeds to the remaining balance of the debt secured by Court House Second Deed of Trust (Tilhance's debt to BCBank).

11. After suit was filed, Defendants filed the instant Motion to Dismiss for failure to state a claim upon which relief can be granted. The parties have filed memoranda in support of their respective positions.

## CONCLUSIONS OF LAW

This matter comes before the Court on a Motion to Dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. After an analysis of the allegations in the complaint, it is evident that the Court must dismiss this case.

"The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W.Va. 530 (1977). "Since the preference is to decide cases on their merits, courts presented with a motion to dismiss for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true." *Sedlock v. Moyle*, 222 W.Va. 547, 550, 668 S.E.2d 176, 179 (2008). "We recognized, however, that liberalization in the rules of pleading in civil cases does not justify a carelessly drafted or baseless pleading." *Par Mar v. City of Parkersburg*, 183 W.Va. 706, 711 (1990). A motion to dismiss under Rule 12(b)(6) enables a circuit court to weed out unfounded suits." *Williamson v. Harden*, 214 W.Va. 77, 79 (2003).

Turning to the law regarding distribution of sale proceeds from a trustee sale pursuant a foreclosure, West Virginia Code §38-1-7 controls.

> The trustee shall apply the proceeds of sale, first to the payment of expenses attending the execution of the trust, including a commission to the trustee of five percent on the first three hundred dollars, and two percent on the residue of the proceeds, and shall apply the balance of such proceeds pro rata (or in the order of priority, if any, prescribed by the trust deed) to the payment of the debts secured and the indemnity of the sureties indemnified by the deed, and shall pay the surplus, if any, to the grantor, his heirs, personal representatives or assigns, as their interests may appear.

W.Va. Code §38-1-7.

Pursuant to this section, generally, junior liens are satisfied out of surplus in same order of priority which they held prior to foreclosure under deed of trust. *Banks-Miller Supply Co. v. Smallridge*, 154 W.Va. 360, 175 S.E.2d 446 (1970). Generally, in foreclosure sales made pursuant to junior liens, the purchaser to take title to the property subject to the senior lien. *Young v. Sodaro*, 193 W.Va. 304, 456 S.E.2d 31 (1995).

When a foreclosure sale brings less than the amount of the secured debt, the creditor has a right to collect from the debtor any deficiency that remains. *State ex rel. Watson v. White*, 185 W.Va. 487, 408 S.E.2d 66 (1991); *Ray v. Donohew*, 177 W.Va. 441, 352 S.E.2d 729 (1986). In other words, debts are not extinguished by foreclosures upon the property which secures the debt unless the foreclosure proceeds pay the debt it full.

I.      Plaintiffs' Claims and Underlying Arguments

Plaintiffs have claimed Fraud, Conversion, Breach of Fiduciary Duty, Breach of Contract, and Merger of Title in relation to the respective trustee sales and distributions. These claims are based upon the contention that distribution was improper. Plaintiffs claim that proper distribution of the trustee sales should have included a payment to them of $1,592,592.83. They reach this conclusion based upon their claim that the foreclosure upon the T.C. Property was pursuant to the 2nd priority Deed of Trust which was made to secure the Court House's debt to BCBank. So, Plaintiffs argue, the proceeds from the sale should have been applied to this junior debt and buyer should take the property subject to the senior lien (standing in the shoes of the debtor). Since BCBank was the buyer, it owned the T.C. Property subject to its own lien on the property. Plaintiffs argue that at this point the debt by Tilhance was extinguished.[2] So, Plaintiffs argue, proceeds from foreclosure upon the C.H. Property should have been applied in whole to the debt owed by Court House. Since the proceeds from the C.H Property sale were approximated $3,913,642.86, and the debt Court House owed to BCBank after crediting the proceeds of the T.C. property sale (as argued by Plaintiffs) was $2,321,050.03, this leaves a

---

[2] Plaintiffs' claim this due to either merger of title or an interpretation of the language "standing in the shoes of the debtor." These arguments are reviewed below.

**006**

"surplus" of approximately $1,592,592.83. Plaintiffs argue that no more sale proceeds should have gone to satisfy the debts owed by Tilhance, due to extinguishment, and that this $1,592,592.83 is "surplus" that should have been disbursed to Court House.

## II. Fraud Claim Must be Dismissed for Lack of Particularity

"The essential elements in an action for fraud are: (1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." Syl. Pt. 1, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66, (1981). The elements of Fraud must be alleged in the appropriate pleading with particularity, and the failure to do so precludes the offer of proof thereof during the trial. *Highmark West Virginia, Inc. v. Jamie*, 655 S.E.2d 509, 221 W.Va. 487 (2007). The reason for the requirement that the circumstances constituting the fraud be stated with particularity, a deviation from the general pleading requirements, is both to allow the party alleged to have committed fraud to defend such charges and to permit the tribunal hearing the matter to conduct a full review of the complaining party's claims. *Kessel v. Leavitt*, 511 S.E.2d 720, 204 W.Va. 95 (1998).

Looking to Plaintiffs' Complaint, there is a clear lack of particularity. There is no factual recitation of any kind regarding Plaintiffs' reliance required by element (2). *Lengyel*, 167 W.Va. 272. The Complaint's only mention of reliance simply recites legal language:

> As a result of their detrimental reliance upon the intentional misrepresentations and fraudulent actions of Epperly and BCBank, Tilhance and Court House have sustained damages in the amount of $1,592,592.83 with interest thereon from January 6, 2011, the plus their attorneys fees and costs incurred herein.

Complaint ¶ 69.

Further, the factual situation found in the Complaint makes it seem impossible for Plaintiffs to have relied upon any misrepresentations. This being the only mention of reliance, there is clearly insufficient particularity in the Complaint with regard to this necessary part of a fraud claim. So, dismissal is appropriate.

In addition, the allegations regarding the acts of misrepresentation or fraud, while made with some degree of specificity, are very vague and lack deeper factual allegations. *See* Complaint ¶ 46, 62, 63, 64, 66, 67. Also, the Court notes that fraud does not appear to be the appropriate claim for the factual situation found in the Complaint. This matter involves the distribution of trustee sale proceeds and Plaintiffs claim they should have been given a portion of the proceeds. There appears to be no fraudulent acts described in the factual recitations of the complaint, other than the general ones listed in paragraphs 46, 62, 63, 64, 66, 67 of the Complaint.

Plaintiffs argue that at least when a fiduciary relationship exists and there is an indication of fraud, the highented pleading standard does not apply, citing *Work v. Rogerson,* 152 W.Va. 169, 160 S.E.2d 159 (1968). However, that case regarded a factual situation where the "transactions and circumstances tend to establish or prove the charge of fraud," which as noted above is unlike the situation at hand. *Id.* at 186. And the very language of that case required an "inference of fraud" to arise first.

Yet most importantly, the language cited by Plaintiffs from that case regards the burden shifting scheme for proof of fraud, and not the heightened pleading standard:

> The law does not presume fraud, and he who alleges it must clearly and distinctly prove it; but fraud may be legally inferred from facts and circumstances calculated to establish it, and in a case where a fiduciary relationship exists and an inference of fraud arises, the burden of proof is then on the alleged feasor to establish the honesty of the transaction.'

008

Id. at 181.

Accordingly, the Court finds this case and Plaintiffs' argument wholly unpersuasive.

Even if distribution was improper, as Plaintiff's claim, that is not enough to sustain a claim of fraud pled with this level of generality, especially regarding the reliance required. Accordingly, the fraud claim found in the complaint should be dismissed for lacking the necessary particularity in the pleadings. *Highmark West Virginia*, 221 W.Va. 487.

III.     Merger of Title Claim Must be Dismissed

There appears to be no express authority for a claim of "Merger of Title" in West Virginia. Further, the Restatement (Third) of Property: Mortgages, §8.5 provides, "The doctrine of merger does not apply to mortgages or affect the enforceability of a mortgage obligation." *See also* Official Comment; Restatement (Third) of Property: Mortgages (stating that the doctrine is simply unnecessary in the modern mortgage law context.) In the few, antiquated cases where merger issues have arisen, the W.Va. Supreme Court has been reluctant to find merger. *See Sullivan v. Sanders*, 66 W.Va. 350 (1909); *Kanawha Valley Bank v. Wilson*, 29 W.Va. 645 (1887); *Burner v. Mutual Protective Ass'n of West Virginia*, 117 W.Va. 206 (1936).

This Court finds that Merger of title is not applicable to this factual situation. Under the Deed of Trust mortgage model, the lender bank may permissibly purchase the foreclosed upon land in order to secure its interest. This practice is not viable if the doctrine of merger were to apply to mortgage obligations. The very manner in which mortgages work precludes the applicability of the doctrine of merger. Accordingly, in line with the Restatement (Third) of Property's view, this Court finds the doctrine of merger to be inapplicable to mortgages. So, the Merger of Title Claim in the Complaint, which is based in whole upon the Doctrine of Merger,

**009**

must be dismissed, as it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, *Chapman,* 160 W.Va. 530.

IV.    Breach of Contract Claim Must be Dismissed

The Court first notes that the Breach of Contract claim may only be maintained against BCBank as the complaint alleges no contract between Plaintiffs and Defendant Epperly. Defendant Epperly is a (substitute) trustee, as such he is under fiduciary duties and not contractual ones.[3]

Further, the Breach of Contract claim states that the breach was of the duty to conduct the sale and disburse the proceeds properly. Complaint ¶¶ 79, 80. Yet, BCBank is not contractually obligated to do that, the Trustee is. So, even if BCBank did fail to properly conduct the sale and distribute the proceeds, they were not obligated to do so. Accordingly, the Breach of Contract claim should be dismissed as it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, *Chapman,* 160 W.Va. 530. So, dismissal is appropriate.

---

[3] Accordingly, the Court notes that the Breach of Fiduciary Duty claim may only be maintained against Defendant Epperly, as BCBank in not alleged to be in a fiduciary relationship with Plaintiffs.

0010

V.   All the Claims Must Be Dismissed Because Plaintiffs Underlying Theory is Based Upon an Improper Legal Conclusion

Plaintiffs' Complaint also contains claims for Conversion and Breach of Fiduciary Duty[4]. These three claims are for the same $1,592,592.83, and are comprised of the same operative facts which Plaintiff argues give rise to liability. Yet, Plaintiffs' theory underlying these claims, and all of the claims, is based upon an improper legal determination: the proper determination of which precludes liability.

In West Virginia, conversion is any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights. *Rodgers v. Rodgers*, 184 W.Va. 82, 399 S.E.2d 664, 677 (1990); *Miami Coal Co. v. Hudson*, 175 W.Va. 153, 332 S.E.2d 114, 121 (1985). Conversion may be proved in three ways: (1) by a tortious taking; (2) by any use or appropriation to the use of the defendant indicating a claim of right in opposition to the rights of the owner; or (3) by a refusal to give up the possession to the owner on demand. *Shamblin's Ready Mix, Inc. v. Eaton Corp.*, 819 F.2d 1139 (4th Cir.1987) (unpublished) (citing *Haines v. Cochran Bros.*, 26 W.Va. 719, 723-24 (1885)). *See Hinkle Oil & Gas, Inc. v. Bowles Rice McDavid Graff & Love LLP*, 617 F.Supp.2d 447 (W.D.Va. 2008) (applying W.Va. Law).

In West Virginia, a fiduciary's a duty of loyalty includes two aspects: "(1) The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary, and (2) The trustee in dealing with the beneficiary on the trustee's own account is under a duty to the beneficiary to deal fairly with him and to communicate to him all material facts in connection with the transaction which the trustee knows or should know." *Smith v. First Community*

---

[4] The Breach of Fiduciary Duty claim may be maintained against Defendant Epperly only; *see supra* Note 2.

*Bancshares, Inc.*, 212 W.Va. 809, 575 S.E.2d 419 (2002) (quoting the Restatement (Second) of Trusts § 170):

These claims necessarily rely upon Plaintiffs' contention regarding the improper distribution of proceeds: the Conversion claim is that Defendants have converted Plaintiffs $1,592,592.83 it was owed and the Breach of Fiduciary Duty claim is that the Trustee breached his duty by not giving Plaintiffs the $1,592,592.83. If the distribution should not have been to them, then these claims cannot succeed because it will create a situation where no set of facts would entitle Plaintiffs to relief. Syl. Pt. 3, *Chapman*, 160 W.Va. 530.

Plaintiffs claim that proper distribution of the trustee sales should have included a payment to them of $1,592,592.93. They reach this conclusion based upon their claim that the foreclosure upon the T.C. Property was pursuant to the 2nd priority Deed of Trust dated December 28, 2008 which was made to secure Court House's debt to BCBank. So, Plaintiffs argue, the proceeds of $794,431.63 from the sale should have been applied to the junior debt, Court House's debt, and buyer should take the property subject to the senior lien (standing in the shoes of the debtor). Since BCBank was the buyer, it owned the T.C. Property subject to its own lien on the property which secured the debt to Tilhance. Plaintiffs argue that at this point the debt by Tilhance was extinguished. *See* Complaint ¶ 52, 53, 54, 55, 57, 72, 83, 84. So, Plaintiffs argue, proceeds from foreclosure upon the C.H. Property should have been applied in whole to the debt owed by Court House. Since the proceeds from the C.H Property sale were approximated $3,913,642.86, and the debt Court House owed to BCBank after crediting the proceeds of the T.C. Property sale (as argued by Plaintiffs) was $2,321,050.03, this leaves a "surplus" of approximately $1,592,592.83. Plaintiffs argue that no more sale proceeds should have gone to satisfy the debts owed by Tilhance and that this $1,592,592.83 is surplus that should have been disbursed to Court House.

0012

The argument that the debt to Tilhance was extinguished, upon which Plaintiffs conclusion rests in whole, is flawed. Plaintiffs uses the common language that the purchaser "stands in the shoes of the debtor" to assert that the underlying debt discharged.[5] Under the Plaintiffs' theory, foreclosure on any collateral eliminates the underlying indebtedness, not just the lien against collateral foreclosed upon, but the debt altogether. That is clearly not the case. The Supreme Court stated the opposite proposition nearly a century ago in *Orenstein-Arthur Koppel Co. v. Martin*, 77 W.Va. 793, 88 S.E. 1064 (1916):

> "To say the vendor may hold the notes after recovery of the property, and not be able to enforce payment thereof, is to state a contradictory proposition, which, to a mind not versed in legal technicality, would be absurd......Contracts are to be so construed as to make them operate justly and equitably, when their terms will permit such an analysis and application, and always so as to avoid absurdities and inequitable results, when that can be done without violation of the terms or departure therefrom."

Simply put, a creditor continues to have a right to the amount it is still owed. *See Generally Ray v. Donohew*, 177 W.Va. 441, 352 S.E.2d 729 (1986).

With a right to collect the debt owed by Tilhance, there can be no surplus. The total disbursements from the two trustee sales is approximately the same as the debt owed to BCBank by Tilhance and Court House. So, the disbursements satisfy the debt, and there is no surplus. Plaintiffs argument that the $794,431.63 from the September sale of the T.C. Property should have been applied to Court House's debt and not Tilhance's debt may be theoretically correct. However, the trustee sale of the C.H. Property was pursuant to both Deeds of Trust for that property. Since the T.C. Property foreclosure did not extinguishing the prior debt (as discussed

---

[5] Plaintiffs also argue this point on a theory of Merger of Title. Yet, the Court finds this argument unpersuasive. *See supra* Section III.

above), *there can be no argument that proceeds of $3,913,642.86 from this sale may not go to both the Tilhance debt and the Court House debt.* While the Trustee's report of sale does not contain specificity with regard to which disbursements were for which indebtedness (*see* Findings of Fact ¶¶ 8, 10), the fact remains that after the C.H. property sale, which was made pursuant to both debts, the $3,913,643.86 properly went to BCBank for the debt of approximately that same amount owed by the Plaintiffs.

So, Plaintiffs theory for a surplus of $1,592592.83 is fatally flawed as it is based upon an improper legal conclusion that the Tilhance debt was extinguished. Further, without this conclusion, it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, *Chapman,* 160 W.Va. 530. Accordingly, dismissal is appropriate.

## VI. Equitable Factors Weigh in Favor of Dismissal

In addition to the reasons enumerated above, certain equitable factors weigh in favor of dismissal. While Plaintiff's argument relies mainly on form, the common sense view of this transaction shows that BCBank at all times intended to pay a price that satisfied the debt owed to them, which was secured by the property in question. To order judgment of $1.5 million against Defendants and to Plaintiffs, who are simultaneously owing an amount greater than $1.5 million to Defendant BCBank would create an absurd and unjust result. So, in equity this Court finds that dismissal is appropriate.

VII.  Lack of Damages Require Dismissal

Last, the Court finds in reading the complaint that Plaintiffs can prove no set of circumstances which would entitle them to damages as they have in fact sustained none, and so the complaint should be dismissed.

From a reading of the complaint and the other filings, the only possible damages in this matter are $1,592,592.83 "surplus" arising out of the trustee sale (along with interest, fees, and costs). Complaint ¶¶ 70, 73, 77, 81, and 86. Under this framing, an analysis makes it clear that Plaintiffs have sustained no damages.

Plaintiffs admit, in the Complaint and elsewhere, that they are indebted to the Defendant BCBank. They admit, in the Complaint and elsewhere, that they have defaulted on their payment obligations to the Defendant BCBank. The Complaint taken as true shows that Plaintiffs owe Defendant BCBank at least an amount greater than the $1,592,592.83 (approximately $4.7 million at the time of foreclosure). Further, Defendants in their filings represent that the outstanding debt at the time was approximately equal to the amount Defendants paid at the two subject Trustee sales (approximately $4.7 million). Notwithstanding the findings in the previous sections of the Order, the best scenario that could come from this Complaint for the Plaintiffs would be a finding that the Trustee should have given $1,592,592.83 to Plaintiffs. Yet, this finding would still be conditioned by the fact that they owe BCBank at least that much, because foreclosures that do no bring enough money for the debt owed do not discharge the debt. *State ex rel. Watson v. White*, 185 W.Va. 487, 408 S.E.2d 66 (1991). Accordingly, even if Plaintiffs' complaint were fully correct, this Court should order that the $1,592,592.83 million be returned to BCBank on account of the debt owed to it. Plaintiffs'

0015

theory of surplus cannot be made without the underlying debt, which they still owe. So, Dismissal is appropriate it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Syl. Pt. 3, *Chapman*, 160 W.Va. 530.

The Court notes that other arguments have been made by counsel in the briefing regarding this motion. While those may lead to a conclusion for dismissal or otherwise, the consideration of those arguments is unnecessary as the Court has found that dismissal is appropriate based upon the reasons herein. Therefore, the Court does not rule upon those arguments and makes this ruling of dismissal based upon all of the reasons enumerated herein.

Accordingly, the Court GRANTS Defendants Motion to Dismiss. The Court notes the objections and exceptions of the parties to any adverse ruling herein.

Therefore it is hereby ADJUDGED and ORDERED that as a FINAL ORDER this matter is DISMISSED with prejudice and should be removed from the Court's active docket.

The Court directs the Circuit Clerk to distribute attested copies of this order to the following counsels of record:

*Counsel for Plaintiff:*
Michael J. Novotny
36 Bakerton Rd.
Harpers Ferry, WV 25425

*Counsel for Defendant:*
Charles S. Trump IV
Trump & Trump, L.C.
171 S. Washington St.
Berkeley Springs, WV 25411

CHRISTOPHER C. WILKES, JUDGE
TWENTY-THIRD JUDICIAL CIRCUIT
BERKELEY COUNTY, WEST VIRGINIA

A TRUE COPY
ATTEST

Virginia M. Sine
Clerk, Circuit Court

By: _____
Deputy Clerk

0016